REALTY TRUST COMPANY v. L. L. CRADDOCK.

No. 7325. Decided January 26, 1938.
Rehearing overruled February 23, 1938.
(112 S. W., 2d Series, 440.)

*Goggans & Ritchie* and *Mart W. Reeves,* of Dallas, for plaintiff in error.

A special assessment levied against property and the record owner of such property is valid where the governing body of the city levying the assessment has no notice, either actual or constructive, that the record owner does not own the entire

legal title. City of Louisiana v. McAllister, 104 Mo. App. 152, 78 S. W. 314; City of St. Joseph v. Forsee, 110 Mo. App. 127, 84 S. W. 98; Childress County v. State, 127 Texas 343, 92 S. W. (2d) 1011.

*Upton, Upton & Baker,* of San Angelo, for defendant in error.

Where property is jointly owned, an assessment against it which does not provide the means by which each joint owner and his portion of the property is held liable, is invalid. Scanlan v. Gulf Bitulithic Co., 44 S. W. (2d) 967; City of Mexia v. Montgomery, 7 S. W. (2d) 594; 23 Tex. Jur. 429.

MR. JUSTICE CRITZ delivered the opinion of the Court.

On August 15, 1925, Edward Maier and J. B. Keating, by general warranty deed, conveyed to L. L. Craddock the west 225 feet of the north one-half of Block 41, Fort Concho Addition to the City of San Angelo, Tom Green County, Texas, for a cash consideration of $800.00. This deed was filed for record in such county on November 23, 1925.

On January 20, 1926, Alfred R. Hardy and wife, by general warranty deed, conveyed to L. L. Craddock the west 100 feet of the south one-half of the above mentioned block for a cash consideration of $1,000.00. The date when this deed was filed for record is not shown, so far as we are able to ascertain from the statement of facts. It seems to be admitted that it was filed and recorded before any of the paving proceedings hereinafter mentioned transpired.

At the times the above properties were acquired L. L. Craddock was married to Viola Craddock. Viola Craddock died intestate on April 25, 1927, after the execution and delivery of the above two deeds, but before any of the hereinafter mentioned paving proceedings were had.

At the time of her death Viola Craddock left surviving her an adopted daughter, who also was the adopted daughter of her husband, L. L. Craddock. This daughter is known as Helen Gould Craddock. Viola Craddock left no heirs other than this adopted daughter and her husband. The adoption papers regarding the adopted daughter were recorded in a county other than Tom Green County, and no record in Tom Green County, which the City of San Angelo was charged with, gave it any notice that L. L. Craddock was a married man at the time he acquired the above properties, or at any other time here involved. Also, at such times no such record of the county gave

any notice of Viola Craddock's death, or of any right or title she or her adopted daughter may have had in the above properties.

On August 21, 1928, the City Commission of the City of San Angelo, Texas, issued to L. E. Whitham & Company paving certificate No. 103-84 in the principal sum of $1,480.28. As shown by pertinent orders pertaining thereto this certificate was secured by a paving lien duly fixed on the west 100 feet of the south one-half of Block 41, above mentioned.

On August 21, 1928, the City Commission of the City of San Angelo, Texas, issued to L. E. Whitham & Company paving certificate No. 103-85 in the principal sum of $1,480.28. As shown by pertinent orders pertaining thereto this certificate was secured by a paving lien duly fixed on the west 225 feet of the north one-half of Block 41, above mentioned.

As shown by the opinion of the Court of Civil Appeals the above two assessments were each for a lump sum against L. L. Craddock alone, and such assessments were levied by virtue and authority of Articles 1086 to 1096, inclusive, and 1104 and 1105, R. C. S. 1925. Plaintiff in error admits that it asserts no rights under Acts of the Regular Session, 40th Legislature, Chapter 276, or Acts of the First Called Session, 40th Legislature, Chapter 106.

Each of the above paving certificates was payable to L. E. Whitham & Company in six installments, as evidenced by installment coupons attached. These six installment coupons matured, one thirty days after date, one a year after date, one two years after date, one three years after date, one four years after date, and one five years after date. They bear seven per cent. interest from date, payable annually, and provide for a reasonable attorney's fee.

As shown by the record, L. L. Craddock, in whose name the above properties stood on the deed records at the times above indicated, executed no contract lien on these properties to secure these certificates.

It appears that at the time these certificates were issued, and at the times all proceedings pertaining thereto were had, these properties stood on the deed records in the name of L. L. Craddock. Also, at all such times the wife of L. L. Craddock was dead. No person representing the City, or in any way connected with these certificates, had any notice regarding the title to these properties, other than as shown by the deed records, at any time while these above proceedings were transpiring.

After the happening of the above events, Fain-Townsend Company filed suit in the 119th District Court of Tom Green County, Texas, against L. L. Craddock, seeking to foreclose a special assessment lien against L. L. Craddock on the above properties, and also seeking a personal judgment against said Craddock. In this suit Fain-Townsend Company asserted their rights in some way under the above described paving certificates. After the filing of the Fain-Townsend Company suit, L. E. Whitham & Company filed another suit in the same court, seeking a foreclosure of special assessment liens upon these properties, as the holder of the first installments due on the above described two certificates, and also seeking to recover a personal judgment against L. L. Craddock for the amount of such installments. The two suits just mentioned were consolidated by order of the district court.

After the happening of the above events, Realty Trust Company, plaintiff in error here, intervened in the consolidated suit. By its plea in intervention, Realty Trust Company asserted ownership of the balance of the paving certificate coupons above described, and sought a foreclosure on the above properties, and also sought a personal judgment against L. L. Craddock for the amount due on such coupons.

The consolidated case was finally tried in the district court before a jury, but at the close of the testimony the court withdrew the case from the jury and entered judgment for L. L. Craddock and against Fain-Townsend Company, L. E. Whitham & Company, and Realty Trust Company. Realty Trust Company appealed to the Austin Court of Civil Appeals, which court affirmed the judgment of the district court. 107 S. W. (2d) 758. Realty Trust Company brings error.

At this point we pause to remark that Fain-Townsend Company has not appealed from the district court judgment, and we are not further concerned with it. L. E. Whitham & Company appealed by writ of error to the above Court of Civil Appeals, and the judgment against it was also by that court affirmed. 107 S. W. (2d) 761. The L. E. Whitham & Company case is before this Court in Cause No. 7326, [*post*, p. 97] 112 S. W. (2d) 444. We will dispose of it by separate opinion, though this opinion will settle the law questions involved in both cases.

If we properly interpret his pleadings, briefs, and arguments, L. L. Craddock contends that the paving certificate pertaining to one of the above described tracts of land is illegal and void, and inoperative to fix any personal liability against him or lien on such land, because, at the time such certificate

was issued and at the times all pertinent proceedings were had by the city pertaining thereto, Helen Gould Craddock, the above mentioned adopted daughter, was the sole real owner of said tract. It is contended that such tract of land was purchased with the separate funds of the wife, and therefore was really her separate property, even though it stood on the records of the county in the name of L. L. Craddock. In this connection, it is finally contended that Helen Gould Craddock acquired title by inheritance from the deceased wife.

As we further interpret his pleadings, briefs, and arguments, L. L. Craddock contends that the paving certificate pertaining to the other tract of land herein involved, is illegal and void, and inoperative to fix any personal liability against him or lien on said land, because the assessment was for a lump sum against him personally, and in the same way against the land, when he only really owned an undivided one-half interest therein and Helen Gould Craddock really owned the other one-half. In this connection, L. L. Craddock contends that during the lifetime of his wife this tract was community property, and, though it stood in his name on the records, it really belonged one-half to her. In this connection, it is finally contended that Helen Gould Craddock by inheritance acquired title to Mrs. Craddock's one-half interest.

Realty Trust Company contends that both of these certificates, and all proceedings had by the city pertaining thereto, were and are legal and regular, because at the time such certificates were issued, and at the times all pertinent proceedings pertaining thereto were had by the city, neither the city nor any of its officers or agents, whose knowledge could bind it, had any notice, actual or constructive, regarding Helen Gould Craddock's equitable title, or regarding the fact that L. L. Craddock was not the sole and unconditional owner of both the real and legal title to each and both of these tracts.

While we are inclined to the view that the facts of this record constitute both of these tracts of land the community estate of L. L. Craddock and his deceased wife, we will, for the purpose of this opinion, treat the case as though one tract belonged to the separate estate of the wife and one to the community estate of L. L. Craddock and wife.

1 Under the undisputed record of this case, both of these tracts of land were deeded to L. L. Craddock alone. They so stood on the records at all times here involved. It must follow that at all times here involved L. L. Craddock was the holder of the legal title thereto. It is the settled law of this State that the purchaser of the apparent legal title to a tract of land takes

a good title thereto as against an equitable owner, if such purchaser takes in good faith, for a valuable consideration, and without notice of such outstanding equitable title. 43 Tex. Jur., p. 621, Sections 361 to 366, and authorities there cited. It follows that had L. L. Craddock, at the times here involved, mortgaged or made conveyance of either or both of these tracts of land to an innocent purchaser, such purchaser would have taken a good title as against the equitable title owned and held by the adopted daughter, Helen Gould Craddock. Ross v. Kornrumpf, 64 Texas 390. As we understand this record, counsel for L. L. Craddock do not question this conclusion.

We come now to consider what rights the holders of these certificates have under the statutes by authority of which they were issued. We have mentioned the rule as to innocent purchasers for what it may be worth in construing the statutes here involved, and in ascertaining the meaning of the word or term *owner* as used in such statutes.

We will not attempt a full analysis of the statutes (Articles 1086 to 1096) under discussion and construction. Generally speaking, they deal with street or highway improvements in towns, cities, and villages. Article 1088 provides that the cost of making such improvements may be wholly paid by the city, or partly by the city and partly by the *owners* of property abutting on the street being improved, but in no event shall more than three-fourths of such cost, except sidewalks and curbs, be assessed against abutting property *owners* or their property. The whole cost of sidewalks can be assessed against abutting property *owners* or their property. Article 1089 deals with the assessments to be made against *owners* of railways and street railways. Article 1090 deals with assessments and assessment certificates. It simply uses the word or term *owners*. Article 1091 deals with exempt property, and provides that no lien shall be fixed against same, but that the *owner* shall be personally liable. Article 1092 deals with the enforcement of paving liens and the personal liability incident thereto. It is provided that the lien created or the personal liability may be enforced by suit or sale of the property assessed in the same manner as may be provided by law for the sale of property for ad valorem city taxes. Article 1093 deals with notice and hearing and the rights of *owners* in such matters. Article 1094 deals further with the hearing, and simply uses the term *owners*. Article 1095 deals with reassessment, and also simply refers to *owners*. Article 1096 provides for suits to set aside or correct assessments. This article simply uses the word or term *owners*.

**2**  When we come to define the word or term *owner*, we find

that it has no definite legal meaning. Strictly speaking, it is not a legal term. The meaning of the term *owner* is not the same under all circumstances. It is not a technical term or word at all, but one of wide application in various connections. In all instances its meaning must be ascertained from the context and subject matter. All this is true when the term is used in a statute. 50 C. J. 770, and notes.

Since the term *owner* has no fixed meaning we must arrive at its meaning as used in the above statutes from the subject matter of the legislation, the purposes thereof, and the ends sought to be accomplished. When we do this, we are convinced that, as used in these statutes, the Legislature intended the term *owner* to mean substantially the same as applied to the word in matters of conveyance. In other words, it is our opinion that when a city is proceeding under the above statutes in paving matters, it has a right to treat the holder of the record legal title, if living, as the sole and unconditional *owner*, unless such city has notice of some outstanding legal or equitable claim antagonistic to the registration records of the county. Any other construction of these statutes would very seriously hamper cities in paving proceedings and put a burden on them clearly not contemplated by the Legislature. As to the notice required, we think that the statutes infer that the city should proceed in good faith and without notice, in the same manner that it would have to proceed were it becoming a purchaser instead of acting to fix a paving liability or lien.

Counsel for L. L. Craddock insists that the holding of the opinion in the case of City of Mexia v. Montgomery, (Civ. App. writ refused) 7 S. W. (2d) 595, controls this case. We think an examination of the opinion in that case will disclose that its facts materially differ from the facts of the case at bar. In the Mexia Case the city did not proceed against the record owner, as he was dead. Furthermore, there was evidence tending to show that the city was fully advised of the actual facts concerning the real ownership of the title. The City of Mexia Case does not support L. L. Craddock's contention here, but, by very clear inference, is authority to the contrary. This is because the opinion takes the trouble to comment on the fact that the city had full notice of the ownership of the lots in question.

In the City of Dallas v. Atkins Case, 110 Texas 627, 223 S. W. 170, cited in the City of Mexia Case, supra, the rule is laid down that under the charter of the City of Dallas where several persons jointly own property, and an assessment is made against them as such owners to meet part of the cost of a

street improvement, it is essential to separate the amount of liability of each owner. We find no fault with such holding, but still adhere to the same where it is applied in a proper case. We simply here hold that where a city proceeds in paving matters under the statutes here involved against the living record owner, without notice of any outstanding antagonistic claim of title, the owner of the record legal title is the owner of the property within the meaning of such statutes.

The Court of Civil Appeals cites the case of Ross v. Kornrumpf, 64 Texas 390, in support of its holding that the city, in the instant case, should have proceeded against the true owners of these tracts, and should have properly apportioned the assessments. We think the Ross Case is no authority against our ruling in the instant case, but, to the contrary, rather supports it. In the Ross Case it is held that land purchased with the wife's separate means is really her separate property, but, as to bona fide purchasers and contract lien creditors without notice of the wife's equitable title, the apparent legal title will prevail. It is then held as against all others, including creditors with mere statutory liens created by judgment or execution, the wife may claim her equitable title. Nothing in such holding militates against our holding as to what is meant by *owner* in the statutes involved in the instant case.

The opinion of the Court of Civil Appeals contains the following ruling:

"Regardless of her separate property, however, and even assuming that all of said property was community property, upon the death of Mrs. Craddock, her half interest therein passed to and was inherited by her adopted daughter, regardless of whether the fact of her death was shown of record. There was a residence upon said property occupied at least part of the time by L. L. Craddock, and asserted by him in this suit to have been his homestead prior to the time of said attempted assessment. It was therefore the duty of the city to ascertain his marriage status and whether or not his wife was living. Any inquiry in this regard would readily have disclosed facts showing that sole ownership of said property was not in L. L. Craddock."

If we properly interpret the above-quoted ruling, it holds that because there was a residence on these properties that had been occupied by L. L. Craddock as a homestead at some period prior to the event of these paving proceedings, such fact alone, as a matter of law, put the city on notice as to the

real ownership of such premises. We are unable to find any authority to support such ruling, and, to our minds, it is erroneous. Certainly, the officers and agents of a city, in paving matters, are not charged, as a matter of law, with notice as to who in the past has occupied premises abutting upon streets proposed to be paved, or as to the claim, manner, or purposes of such occupancy.

4  Finally, we deem it proper to remark that Helen Gould Craddock is not a party to this suit. If this condition remains, the least that can be said is that no final judgment that may be rendered herein will be binding on her.

The judgments of the district court and the Court of Civil Appeals are both reversed, and the cause remanded to the district court for a new trial.

Opinion delivered January 26, 1938.

Rehearing overruled February 23, 1938.