# Childress County v. State of Texas et al.

No. 6970.   Decided April 1, 1936.
Rehearing overruled May 20, 1936.
(92 S. W., 2d Series, 1011.)

*Mahan & Broughton* and *Elmer V. East,* County Attorney, all of Childress, for appellant.

*Lloyd R. Kennedy,* of Morton, and *Lockhart & Brown,* of Lubbock, for appellee.

MR. JUSTICE SHARP delivered the opinion of the court.

This case is here on certified questions from the Court of Civil Appeals at Amarillo. The certificate reads as follows:

"The State of Texas granted to Childress County four leagues of public free school land, situated in Bailey and Cochran Counties.

"On June 20, 1910, acting by and through its Commissioners' Court, Childress County, as First Party, entered into a written contract with S. P. Britt and others, as Second Parties, in which it is stipulated that the County 'agrees to sell, and does hereby sell' to Second Parties the four leagues of Childress County school land, which was fully described, upon the following terms and conditions:

" 'The total consideration at average of $10.00 per acre to be paid forty years after date, or as hereinafter stated, together with interest on said amount at the rate of five per cent per annum, payable semi-annually in advance on the 20th day of June of each year. * * *

" 'The said four leagues having been this day, by an order of this court, platted into one hundred tracts, which said order and plat are here referred to and made a part hereof, the same are contracted for and sold on the basis of and according to said plat, and a separate contract and conveyance shall be made for each tract respectively as hereinafter ordered and agreed to; each of said tracts numbered respectively 1 to 25, inclusive, in each of said leagues is contracted and sold for an

average price of $10.00 per acre, and a separate contract and conveyance shall be made and executed for each of said tracts respectively according to the classification and price, and it is understood and agreed that each of said tracts is contracted for and sold separately as though only one tract was described; this order and agreement, however, to cover all tracts numbered as aforesaid embracing in the whole the said four leagues, and each of said tracts and the improvements thereon shall stand alone for its purchase price and interest thereon, Parties of the Second Part having this day paid to the Commissioners' Court of Childress County for the use of said County the sum of Eight Thousand Nine Hundred Six and 71-100ths Dollars ($8,906.71), being interest in advance for the first year of the total aggregate consideration for said one hundred tracts, and receipt of the said amount is hereby acknowledged.

" 'The said Parties of the Second Part, or their assigns, to have the option to pay the said consideration for each tract separately, or any part thereof, at any interest-paying period, * * * and the payment of said consideration in full, and all accrued interest thereon, for any one tract, shall discharge the entire obligation to Childress County in payment for said tract, whereupon the title to said tract shall vest absolutely in said Parties of the Second Part, or their assigns, and said County shall execute its warranty deed to Parties of the Second Part, or their assigns, for said tract.

" 'Failure to pay any installment of interest within sixty days after the date the same becomes due on any tract shall cause this obligation, as to such tract, to become absolutely void, at option of Childress County, and of no further force and effect, and shall cause said tract, and all improvements thereon, to revert to said County without judicial ascertainment.

* * * * * * * *

" 'Parties of the Second Part having this day appeared in open court and accepted the terms and conditions of this agreement and contract, it is ordered that W. G. Gross, County Judge of Childress County, shall, in pursuance of this order and agreement, execute one hundred obligations for and in behalf of and in the name of the Commissioners' Court of Childress County, and for said County, and deliver the same to the said Parties of the Second Part, which shall be numbered respectively 1 to 25, inclusive, in each league; * * *.'

"In pursuance of this order, W. G. Gross, the County

Judge, executed the one hundred obligations to Second Parties, the material portions of each of which are that:

" 'Now, therefore, in accordance with said order, contract and agreement above stated, I, W. G. Gross, County Judge of Childress County, acting for and in behalf of the Commissioners' Court of Childress County, Texas, and said County, in consideration of the payment this day made to said County, as recited in said Minutes of the Court, and the terms and conditions of said order, do hereby execute these presents and the above mentioned contract as the obligation of said County.'

"Each instrument covered one of the separate tracts, gave the number of acres and the value per acre, referred to and made a part thereof the original contract for sale, contained no granting clause, but a habendum clause which was as follows:

" 'To have and to hold' to Second Parties, 'their heirs and assigns, forever, all the rights, powers, equities, claims, title and interest in the aforesaid mentioned tract under and by virtue of the contract with Childress County, Texas, as evidenced by the order of its Commissioners' Court above mentioned and referred to.'

"I. C. Enochs acquired the rights of S. P. Britt et al. to the portion of said four leagues of school land situated in Cochran County, and was the record owner thereof on January 1, 1931, and January 1, 1932, subject to the lien in favor of Childress County for the purchase money contained in the original contract of sale.

"It is agreed that the land in Cochran County, which is all that is involved in this suit, is agricultural land.

"The Commissioners' Court of Childress County, at its February term in 1933, cancelled said original contract of sale and declared it null and void because I. C. Enochs had failed to pay the interest installments as they matured, and the validity of this action of the court is not challenged.

"The land was assessed for taxes for the years 1931 and 1932 in the name of I. C. Enochs, and was assessed for taxes for the year 1933 in the name of Childress County.

"The taxes became delinquent and by suit in the name of the State of Texas, which was contested by Childress County, judgment was obtained on a trial before the court against I. C. Enochs for the sum of $3,226.42, the taxes, interest, penalties and costs for the years 1931 and 1932, the tax lien declared to be superior to any lien or right of Childress County, and such tax lien foreclosed on the land against both

I. C. Enochs and Childress County, and the clerk directed to issue order of sale on such judgment.

"Judgment was rendered against Childress County for the sum of $846.50, the taxes, interest, penalties and costs for the year 1933, and decreeing that the judgment be fixed as a lien upon the land, but that no order of sale issue for the taxes for the year 1933; that the amount of the judgment for the 1933 taxes be certified to the Commissioners' Court of Childress County, and the Commissioners' Court of said County was ordered and directed to pay said judgment out of the revenue derived from the land, if any, and if the County had no such revenue that the Commissioners' Court of said County pay the judgment out of its general fund.

"From the judgment foreclosing the tax lien of the State and County against the land for the delinquent taxes due for the years 1931 and 1932, and the monetary judgment against Childress County for the taxes delinquent for the year 1933, said County has prosecuted this appeal.

"The contentions of appellant present some issues of law, revealed by the following questions, which we deem it advisable to certify to your Honorable Court for determination:

"1. Was the interest of Childress County, evidenced by the lien retained to secure the purchase money for the land, superior:—

"(a) to the tax lien for delinquent State taxes for the years 1931 and 1932;

"(b) to the tax lien for county taxes for said years?

"2. Childress County not having cancelled the contract of sale until in February, 1933, was said County liable:—

"(a) for the State tax of 1933;

"(b) for the tax due Cochran County for said year?

"3. Was Childress County, after having re-acquired the title in February, 1933, liable:—

"(a) for the delinquent State taxes for the years 1931 and 1932;

"(b) the delinquent County taxes for said years?"

Question No. 1 involves the construction of Section 6a of Article VII and Section 15 of Article VIII of the Constitution of Texas, and Articles 7145, 7146, 7150a, and 7172 of Vernon's Annotated Texas Statutes:

Section 6a of Article VII reads: "All agriculture or grazing school land mentioned in section 6 of this article owned by any county shall be subject to taxation except for State purposes to the same extent as lands privately owned."

Section 15 of Article VIII reads: "The annual assessment made upon landed property shall be a special lien thereon; and all property, both real and personal, belonging to any delinquent taxpayer shall be liable to seizure and sale for the payment of all the taxes and penalties due by such delinquent; and such property may be sold for the payment of the taxes and penalties due by such delinquent, under such regulations as the Legislature may provide."

Article 7145 reads: "All property, real, personal or mixed, except such as may be hereinafter expressly exempted, is subject to taxation, and the same shall be rendered and listed as herein prescribed."

Article 7146 defines real property for the purpose of taxation.

Article 7172 provides that "all taxes upon real property shall be a lien upon such property until the same shall have been paid."

In response to Section 6a of Article VII, which was adopted at an election held November 2, 1926, the Legislature enacted Article 7150a, which provides that "any county in this State owning any land mentioned and referred to in Section 6a of Article VII of the Constitution of Texas * * * is hereby authorized to pay taxes duly and lawfully levied on the same out of the County's revenue derived from such land. In the event any County has no such revenue, such taxes shall be paid out of the general fund of the County, and if any County has sufficient of such revenue to pay only a portion of such taxes the remainder shall be paid out of the general fund of the County."

■ Section 6a of Article VII and Section 15 of Article VIII of the Constitution should be considered together. The clear intention expressed in Section 15 of Article VIII of the Constitution and in Article 7172 of the Statutes is that all taxes assessed against land shall be secured by a special lien thereon. That is the uniform rule applied to lands privately owned. The intention expressed in Section 6a of Article VII is that all agricultural or grazing school land, owned by any county, shall be subject to tax purposes to the same extent as lands privately owned; except same shall not be taxed for State purposes.

■ From the time Childress County sold the land to the time the county cancelled the contract in February, 1933, and reacquired the title thereto, the land was privately owned; and the rule expressed in Section 15 of Article VIII is applicable. Nor does the language used in Article 7150a, supra, change the

rule. There is nothing in that Article to show that it was the intention of the Legislature to prohibit a special lien being placed on agricultural and grazing school land owned by a county, to secure taxes legally due thereon. Of course same could not be taxed for State purposes. It merely relaxes the rigid rule controlling counties in the administration of their financial affairs, and allows a county to use certain funds for the purpose of paying the taxes against the lands owned by such county, and against which taxes may be assessed by virtue of Section 6a, supra.

The facts certified clearly show that Childress County sold to certain vendees certain lands situated in Cochran County for a certain consideration. The sum of $8906.71 was paid in cash for the interest in advance for the first year. In compliance with the order passed by the Commissioners' Court of Childress County, the county judge executed "one hundred obligations for and in behalf of and in the name of the Commissioners' Court of Childress County and for said county," and same were delivered to the vendees. It was agreed that each tract was sold separately and the payment of the consideration for each tract should discharge the obligation in payment thereof, and the title to said tract should vest absolutely in the vendees or their assigns. The vendees conveyed their rights and interest in the four leagues of land in Cochran County to I. C. Enochs, who was the record owner thereof on January 1st of the years 1931 and 1932, subject to the lien held by Childress County for the purchase money thereof. Thus it appears that Enochs held the title to the land in question, subject to the indebtedness and lien in favor of Childress County.

■ No rigid or exact form is required to vest title to property in a person to make it subject to taxation. Stephens Co. v. Mid-Kansas Oil & Gas Co., 113 Texas, 160, 254 S. W., 290, 29 A. L. R., 566; Sheffield v. Hogg, 124 Texas, 290, 77 S. W. (2d) 1021, 80 S. W. (2d) 741. "Property * * * held under a contract for the purchase thereof, belonging to this State, or that is exempt by law from taxation in the hands of the owner thereof, shall be considered for all the purposes of taxation, as the property of the person so holding the same, except as otherwise specially provided by law." Art. 7173, Vernon's Annotated Texas Statutes.

The person having legal title to property is generally considered to be the owner thereof for purposes of taxation. The person assessed need not have a perfect or unencumbered title to the land to make the assessment legal. If he is the record

owner, or is vested with the apparent legal title, or is in posses-sion thereof, coupled with such claims and evidences of owner-ship as will justify the assumption that he is the owner thereof, the assessor will be justified in assessing the property for taxa-tion against such owner. 61 C. J., p. 207, and authorities cited in the notes.

■ The facts stated in the certificate clearly show that the sale has the general characteristics of an ordinary sale between a vendor and a vendee. Childress County sold its land for a cer-tain consideration, and so long as the vendees or assigns made the payments expressed in the contracts and obligations, the title and possession remained in the vendees, and not in Childress County. Not until the vendees or their assigns failed to pay the consideration, did Childress County have the right, at its option, to declare the original sale void; at which time the land would revert to the county. After school land has been sold by a county, it becomes the property of the vendee for the purpose of taxation, though the sale be made on credit or under an executory contract; and the county is not entirely divested of title to the land until it is fully paid for. Until the forfeiture or rescission takes place on account of the default of the pur-chaser, the vendee is to be regarded as the owner, and the land may be sold for taxes as his property. Taber et al. v. State, 38 Texas Civ. App., 235, 85 S. W., 835 (writ refused).

We answer Subdivisions (a) and (b) of Question No. 1, "No."

Questions Nos. 2 and 3 will be considered together.

■ Article 7151 provides, among other things, that any property purchased or acquired on the first day of January shall be listed for taxation by or for the person owning it at that time. It is unquestioned that Enochs owned the land on January 1, 1933, and that Childress County did not rescind the contract of sale until in February, 1933. The fact that Childress County can-celled the contract of sale, and the title to the land reverted to the county, does not change the rule established for the listing of property for tax purposes. Until the title held by Enochs re-verted to Childress County, it was privately owned land. The foregoing Article makes it clear that all property owned by a person on the first of January must be listed for taxation, and a sale thereof shortly afterwards will not affect the rule. Humble Oil & Refining Co. v. State, 3 S. W. (2d) 559 (Civ. Appls., writ refused); Carswell & Co. v. Habberzettle, 39 Texas Civ. App.,

493, 87 S. W., 911; Winters v. Independent School District (Civ. App.), 208 S. W., 574.

█ The land involved is agricultural school land. The title to same reverted to Childress County in February, 1933. Section 6a of Article VII, supra, expressly provides that such land may be taxed as privately owned lands; except that it may not be taxed for State purposes. The county is merely an arm of the State. It is a political subdivision thereof. In view of the relation of a county to the State, the State may use, and frequently does use, a county as its agent in the discharge of the State's functions and duties. Jones v. Alexander, 122 Texas, 328, 59 S. W. (2d) 1080; Aransas Pass v. Keeling, 112 Texas, 339, 247 S. W., 818; Bexar County v. Linden, 110 Texas, 339, 220 S. W., 761. The State has appropriated and dedicated to counties, for public school purposes, a part of its public domain. The title thereto is vested in the counties. Section 6 of Article VII of the Constitution. This is for the benefit of the State as well as for the benefit of the counties. When the title to this land reverted to Childress County, it also, in a certain sense, reverted to the State. Greene v. Robison, 109 Texas 367, 210 S. W., 498.

While this precise question, so far as we know, has never been determined by this Court, we think the great weight of authority sustains the rule that when the title to this land reverted to Childress County, the tax lien for State purposes became merged with the ownership of the land by the county. This property, dedicated to a county exclusively for a public purpose, and having been sold by the county to individuals, who failed to comply with the contract of sale, whereupon the title to the land reverted to the county, cannot be burdened with taxes due the State during the time it was privately owned. 61 C. J., p. 945, and cases cited; 26 R. C. L., p. 299, and authorities cited.

The case of State v. Stovall et al., 76 S. W. (2d) 206 (Civ. Appls., writ refused), involved the question of the title to land reverting to the State after sale thereof and then used for public purposes, and it was held by Chief Justice Gallagher, speaking for the court, that it was not subject to seizure and sale to satisfy a judgment for school taxes levied during the interim. The following authorities are cited in support of this view: Foster v. City of Duluth, 120 Minn., 484, 140 N. W., 129, 131, 48 L. R. A. (N. S.) 707; State v. Locke, 29 N. M., 148, 219 Pac., 790, 792, 30 A. L. R., 407, and note page 413; Reid v. State, 74

Ind., 252; State v. Maricopa County, 38 Ariz., 347, 300 Pac., 175; Laurel v. Weems, 100 Miss., 335; 56 So., 451, 452, 453, Ann. Cas. 1914A, 159; State v. Snohomish County, 71 Wash., 320, 128 Pac., 667, 670; Smith v. Santa Monica, 162 Cal., 221, 121 Pac., 920, 921; Gachet v. City of New Orleans, 52 La. Ann., 813, 27 So., 348; Gasaway v. City of Seattle, 52 Wash., 444, 100 Pac., 991, 993, 21 L. R. A. (N. S.) 68; Independent School Dist. v. Hewitt, 105 Iowa, 663, 75 N. W., 497, 498; 26 R. C. L., p. 299, §263, and note 2; 61 C. J., p. 945, §1215.

█ It is undisputed from the facts certified that Enochs owned the land in controversy on January 1st of the years 1931, 1932, and 1933. Enoch's ownership thereof on January 1, 1933, created a liability on his part for the taxes levied upon such property for that year. Thus, it clearly appears that for the three years aforesaid the land was privately owned. The certificate states that the land was assessed for taxation for the year 1933 in the name of Childress County. No other facts showing in what manner the land was assessed in the name of Childress County for the year 1933 are given. In order to obligate Childress County to pay the taxes on this land for the year 1933, it must be shown that the assessment of taxes for that year was made in a manner binding on the county. The authority of the Commissioners' Court of Childress County to make contracts in its behalf is strictly limited to that conferred, either expressly or by fair or necessary implication, by the Constitution and laws of this State. 11 Texas Jur., p. 632, §95; 15 C. J., pp. 540, 541, §233; Foster v. City of Waco, 113 Texas, 352, 255 S. W., 1104; Von Rosenberg v. Lovett (Texas Civ. App., writ refused), 173 S. W., 508; Roper v. Hall (Texas Civ. App.), 280 S. W., 289; Art. 2351, Vernon's Annotated Texas Statutes. In Article 2351, supra, are enumerated the powers and duties that each Commissioners' Court shall have. Section 8 of that Article authorizes the Commissioners' Court to "provide for the protection, preservation and disposition of all lands granted to the county for education or schools." If the Commissioners' Court of Childress County, acting as the governing body of that county, or through an agent duly and legally appointed for that purpose, in order to protect and preserve the County's interest in the lands involved here, rendered same for taxation for the year 1933, it would be a binding obligation on the part of Childress County to pay the taxes. Otherwise it would not be. 11 Texas Jur., p. 635, § 97. When the land reverted to Childress County, it was reacquired subject to the taxes due thereon while it was

privately owned. Therefore, Childress County can protect its interest in the land by paying the taxes due Cochran County for the years 1931 and 1932, or let it be sold for such taxes. If Childress County legally bound itself to pay the taxes on this land for the year 1933, it would be liable for such taxes for that year. Other than that, Childress County is not liable for the taxes due Cochran County on the land while it was privately owned.

We answer Subdivision (a) of Question No. 2, "No." We answer Subdivision (b) of Question No. 2 as follows: If Childress County rendered the land for taxation, in a manner binding upon it, for the year 1933, we answer same, "Yes." If otherwise, Childress County reacquired the land subject to the taxes due Cochran County for that year.

We answer Subdivision (a) of Question No. 3, "No." We answer Subdivision (b) of Question No. 3 as follows: When the land reverted to Childress County, it reacquired the land subject to the taxes due Cochran County for the years 1931 and 1932, and Childress County had the option of paying the taxes due for those years, in order to protect its interest in the land, or let the land be sold for such taxes. Further than that, no liability attached to Childress County for the taxes due Cochran County for those years.

Opinion delivered April 1, 1936.
Rehearing overruled May 20, 1936.