THE ATTORNEY GENERAL.
OF TEXAS
AUSTIN 11, TEXAS



GERALD C. MANN
~~XXXXXXXXXXXXXXXXXX~~
ATTORNEY GENERAL

Hon. William Scanlan
Assistant County Attorney
Cameron County
Brownsville, Texas

Dear Sir:

Opinion No. 0-1654

Re: State and county taxes for 1939
against real estate acquired
after July 1, 1939, by the
Brownsville Housing Authority.

By your letter of November 16, 1939, you advise that the Brownsville
Housing Authority, organized under Article 1269k of the Revised Civil
Statutes of Texas, obtained by deed and by the exercise of its power
of eminent domain, certain real estate in the City of Brownsville, Texas,
the title to which vested in the Authority after July 1, 1939; that all
taxes on such property to and including the year 1938 were paid, and
that the Authority has set aside sufficient money to pay State and
county taxes upon the property for the year 1939, should it be required
to do so; that as of January 1, 1939, the title to this property was
vested in private individuals.

From this state of facts, you ask the opinion of this department upon
the question whether the State and county taxes upon these properties
for the year 1939 are collectible.

Article 7151, Revised Civil Statutes of Texas, 1925, provides in part
as follows:

"All properties shall be listed for taxation between
January 1st and April 30th of each year, when required
by the Assessor, with reference to the quantity held
or owned on the first day of January in the year for
which the property is required to be listed or rendered ..."

By virtue of the provisions of this statute, the ownership of property on
the first day of January of any year creates a liability on the part
of the owner for taxes levied upon such property for that year, Winters
vs. Independent School District of Evant (Civ. App.), 208 S. W. 574, and
the sale of such property shortly thereafter does not affect the rule.
Childress County vs. State, 127 Tex. 343, 92 S. W. (2d) 1011.

It is true that Section 22 of the Act under which the Brownsville Housing Authority is organized provides:

> "The property of an authority is declared to be public property used for essential public and governmental purposes and such property and an authority shall be exempt from all taxes and special assessments of the city, the county, the State, or any political subdivision thereof;..."

However, whether a particular piece of property is exempt from taxation or not depends upon its ownership on the date as of which the taxes are assessed, and if, after such date, but before the tax is paid, the property is taken by eminent domain or bought by a body politic or corporate the property of which is exempt from taxation, the tax as originally assessed is valid and subsisting, and the person who owned the property on the date as of which the tax was assessed is legally bound to pay it. 26 R. C. L. 299.

The acquisition of title to these properties, of course, imposes no personal responsibility upon the Housing Authority for taxes due the State and the county, assessed against the individual owners thereof as of January 1, 1939, However, there is involved in your inquiry, of necessity, the question whether the lands taken over by the Housing Authority are held by it subject to the valid liens, if any, of the State and county against such lands for taxes assessed against the' individual owners thereof as of January 1, 1939.

In view of the provisions of the Act under which the Housing Authority is created, we do not find it necessary to discuss the doctrine of merger, as applied to the present situation.

Our Constitution, Article 8, Section 15, provides as follows:

> "The annual assessment made upon landed property shall be a special lien thereon; and all property, both real and personal, belonging to any delinquent taxpayer shall be liable to seizure and sale for the payment of all the taxes and penalties due by such delinquent, and such property may be sold for the payment of the taxes and penalties due by each delinquent, under such regulations as the Legislature may provide."

> "The lien of the State, under the provisions of the Constitution, arises out of the assessment of property, and does not exist until that assessment is made." State vs. Farmer (Supreme Court), 59 S. W. 541.

It appears that the properties involved in your inquiry were not acquired by the Housing Authority until after the expiration of the time provided by law for the making of assessments thereon. Applying the presumption that the officers of the State have performed their duty in accordance with the law, we presume that assessments were regularly made, prior to April 30, 1939, and prior to the acquisition of title to these properties by the Housing Authority, by the proper officers, so that the tax lien given by the Constitution came into existence prior to the time the properties were acquired by the Brownsville Housing Authority.

Article 1269k provides in part as follows:

"Sec. 3 (1) Real property shall include all lands, including improvements and fixtures thereon, and property of any nature appurtenant thereto, or used in connection therewith, and every estate, interest and right, legal or equitable therein, including terms for years and liens by way of judgment, mortgage, or otherwise and the indebtedness secured by such liens."

"Sec. 12. ... Property already devoted to a public use may be acquired in like manner, provided that no real property belonging to the city, the county, the State, or any political subdivision thereof may be acquired without its consent."

Sec. 20. All real property of an Authority shall be exempt from levy and sale by virtue of an execution, and no execution or other judicial process shall issue against the same, nor shall any judgment against an authority be a charge or lien upon its real property; ..."

"Sec. 22. The property of an authority is declared to be public property used for essential public and governmental purposes and such property and authority shall be exempt from all taxes and special assessments of the city, the county, the State or any political subdivision thereof; ..."

The lien for taxes existing against such properties in favor of the State and the county is clearly "an interest in land." Section 12 of the Act provides that no real property belonging to the county or the State may be acquired without its consent, and Section 3 (1) defines the term "real property" in such manner as to include every interest in lands. The Act in our opinion expressly, therefore, prevents the Housing Authority from depriving the State or the County of the benefit of liens for taxes lawfully fixed against real properties for taxes due the State and county.

We trust that the foregoing sufficiently answers your inquiry.

                              Yours very truly

                       ATTORNEY GENERAL OF TEXAS

                       s/  R. W. Fairchild


                       By
                           R. W. Fairchild
                           Assistant

RWF:pbp/ldw

APPROVED DEC. 13, 1939
s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY B. W. B.
CHAIRMAN