**GENERAL ELECTRIC CAPITAL CORPORATION, Appellant,**

v.

**CITY OF CORPUS CHRISTI, Nueces County, Flour Bluff Independent School District, and Tuloso–Midway Independent School District, Appellees.**

**No. 13–92–033–CV.**

Court of Appeals of Texas,
Corpus Christi.

Feb. 11, 1993.

Opinion Overruling Rehearing in Part
March 11, 1993.

Rehearing Overruled April 8, 1993.

David A. Sibley, Meredith, Donnell & Abernethy, Corpus Christi, William H. Daniel, John W. Stayton, Jr., McGinnis, Lochridge & Kilgore, Austin, for appellant.

Kent M. Rider, Calame Linebarger Graham & Pena, Austin, for appellees.

Before NYE, C.J., and KENNEDY and GILBERTO HINOJOSA, JJ.

## OPINION

NYE, Chief Justice.

■ This is a suit for delinquent property taxes on mobile homes. After a trial to the bench, the court entered judgment against the defendant below, General Electric Capital Corporation (GECC). GECC appeals, claiming that the evidence is factu-

ally and legally insufficient to show that it was liable for any of the taxes allegedly owed. It claims that the trial court erred in entering judgment against it because it showed it was not the owner as a matter of law. Taxing authorities can collect ad valorem taxes from the owner of taxable property that is located within their taxing district as of January 1 of the tax year. In addition, or alternatively, the taxing authority may proceed against the title owner or levy a tax lien against the property properly taxed. The issue presented in this case is whether the taxing entity may impose ad valorem taxes on a secured party in possession, or with the right of possession, even though the actual legal title is not in that party's name. We hold that it can.

GECC financed individual purchases of over 300 mobile homes in the early 1980's. During the latter half of the eighties, the mobile home market suffered a fierce downturn. Many dealerships failed, and hundreds of mobile home owners defaulted on their notes. Many ad valorem taxes on the mobile homes in this case were generally unpaid for the years 1985 through 1989. On the mobile homes sold and involved in this case, GECC held a security interest on most and repossessed them in the event of default. The taxing authorities attempted to collect the delinquent taxes on the units from GECC. GECC maintains that taxes are visited upon the *owner* of the property only, and not upon one who is merely a secured party. It argues that its duties as a secured party in possession under the U.C.C. (the duty to preserve the property and to sell in a commercially reasonable manner, *see* TEX.BUS. & COM.CODE ANN. § 9.207 (Vernon 1991)) are inconsistent with ownership and the Tax Code does not authorize the imposition of taxes on anyone other than an owner. We disagree.

A similar issue was addressed in *State v. Lincoln Corp.,* 596 S.W.2d 593, 595 (Tex. Civ.App.—Beaumont 1980, writ ref'd n.r.e.), in which the State of Texas instituted proceedings to collect delinquent ad valorem taxes. The State sued a mobile home dealership for the taxes on the mo-

bile home units it held as inventory. It included as a defendant the financing company which held a security interest in the homes assessed. The Court of Appeals held that the financier was not liable for the taxes because the taxes were not assessed against it, nor was the financier in possession of the units. "Ownership of the property was not shown to be in [the financier] until it repossessed the homes." *Lincoln Corp.*, 596 S.W.2d at 595.

■ In the present case, the lienholder, GECC, was the party assessed for the taxes. Further, GECC repossessed and held many of the units. We hold that the judgment rendered against it was proper insofar as it was shown to be the owner by repossession. The Tax Code provides that property taxes "are the personal obligation of the person who *owns or acquires* the property on January 1 of the year for which the tax is imposed." Tex.Tax Code Ann. § 32.07 (Vernon 1992) (our emphasis added). What constitutes an "owner" of property for tax purposes has been addressed as follows:

> The person having legal title to property is generally considered to be the owner thereof for purposes of taxation.... If he is the record owner, or is vested with the apparent legal title, or is in possession thereof, coupled with such claims and evidences of ownership as will justify the assumption that he is the owner thereof, the assessor will be justified in assessing the property for taxation against such owner.

*Childress County v. State*, 127 Tex. 343, 92 S.W.2d 1011, 1015 (1936). Taxes on mobile homes must be listed (and thereby assessed) in the name of the "owner." Tex.Tax Code Ann. § 25.06. While it would appear that "owner" refers to the holder of legal title, the term is not defined by that statute. The Texas Supreme Court, speaking of the meaning of the word "owner" when used in a statute, has also stated:

> When we come to define the word or term owner, we find that it has no definite legal meaning. The meaning of the

term owner is not the same under all circumstances. It is not a technical term or word at all, but one of wide application in various connections. In all instances, its meaning must be ascertained from the context and subject matter. *Realty Trust Co. v. Craddock*, [131 Tex. 88] 112 S.W.2d 440, 443 (Tex.1938).

GECC contends that, based upon the U.C.C. and past authority, title to property does not pass to the secured party upon repossession. Rather, title passes directly from the debtor to the third-party purchaser in a foreclosure sale. *See Kolbo v. Blair*, 379 S.W.2d 125 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n.r.e.). While we find GECC's argument well reasoned and ably advanced, this case does not concern the passage of legal title. GECC fails to recognize that the taxing authorities may elect to go against the title owner of the property, the party who has possession or the superior right of possession on January 1 of the tax year, or against the property itself. The issue here is whether a secured party *in possession* of personal property can be held responsible for ad valorem taxes under the Tax Code. We believe that it can. Neither the statute itself, nor the case law require taxation of the *legal* title holder only. Nor does the law prohibit taxation of the secured party in possession as an "owner" of the property. The record shows that for many of the units, GECC admitted that it held a security interest, it held the original certificate of title and the signed affidavits necessary to effect a change in record ownership. Although it had not initiated the procedure required by law to change the named legal title owner, it had the power to do so.[1] GECC also refurbished and insured many of the units. We hold that for purposes of ad valorem taxation, the secured party in possession is the equivalent of the title owner. The trial court could properly have entered judgment against GECC for the delinquent taxes so long as the taxing authorities adduced both legally and factually sufficient evidence to show that GECC was an owner

---

1. The fact that GECC was not named as the official legal title owner accounts for the trial

court's finding that GECC was the "de facto" owner of the units.

due to repossession. We review the sufficiency of GECC's evidence on these issues under the familiar standard set out in *Pool v. Ford Motor, Co.*, 715 S.W.2d 629, 635 (Tex.1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456, 457 (Tex.1985); *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Fin. Co. v. Garza*, 626 S.W.2d 120, 125 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); and Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Tex.L.Rev. 361 (1960).

At trial, the taxing authorities introduced the delinquent tax rolls. The records showed that taxes on certain mobile homes were assessed against GECC and were unpaid. GECC concedes that, in doing so, the taxing authorities established their prima facie case for judgment in the amount of the delinquent taxes. *See* Tex. Tax Code Ann. § 33.47(a) (Vernon 1992). It was then incumbent upon GECC to introduce evidence sufficient to prove a defense—either that it did not own the property or that the property was not located in the taxing district as of January 1 of the tax year. Tex.Tax Code Ann. § 42.09(b)(1), (2). GECC claims that it proved it was not liable for the taxes because it proved it did not own the property, and the taxing authorities did not adduce any additional evidence of GECC's ownership. *See Alamo Barge Lines v. City of Houston*, 453 S.W.2d 132, 133–34 (Tex.1970). Under our reading of *Alamo Barge*, once GECC produced sufficient evidence of non-ownership, the taxing authorities were required to go forward with additional evidence to prove that GECC owned the property. Here, the trial court found GECC's proof of non-ownership inadequate to rebut the taxing authorities' prima facie case. As such, the authorities were never required to adduce additional evidence of ownership. GECC raised a defense of non-ownership on grounds that it had no interest in the property or was only the secured party, not the title owner. We hold that the taxing authorities then had the burden to go forward with evidence showing that GECC was the secured party and that it was in possession, or had the superior right of possession, to the units in question. The trial court's entry of judgment against GECC is in error only with regard to those units in which GECC did not have a security interest or that it did not possess as of January 1 of the tax year in question.

Taxes were assessed on the homes in thirteen different accounts. Five of the accounts contained only one unit, assessed for a single tax year. One account consisted of a single unit, assessed for two years. GECC most sharply contested two accounts containing seven units and one account consisting of over 300 units, assessed for tax years 1986 through 1988. Attached to the taxing authorities' pleadings were inventory worksheets, obtained from the dealerships which stored some of the units on their lots. The taxing authorities entered these records into evidence for the limited purpose of showing a description of the property taxes, but not to prove GECC's ownership. A significant part of GECC's defense consisted of showing that these worksheets were hearsay, "completely unreliable and ineffective" to establish GECC's ownership. Michael Mantz, an employee for the Appraisal District, which is responsible for the listing, valuation, and assessment of personal property for taxation, testified that the Appraisal District did not rely solely on these worksheets in determining the party who should be assessed the taxes. Nor were they considered renditions for tax purposes.

We hold that GECC waived any complaint about the manner in which the taxing authorities determined that GECC was the party responsible for the taxes. The Tax Code provides for an administrative protest procedure by which the taxpayer may complain of the appraisal district's procedures. *See* Tex.Tax Code Ann. § 41.-41(7), (9). The taxpayer's failure to pursue administrative remedies precludes any protest in a subsequent suit for delinquent taxes, except for the affirmative defenses of non-ownership and the taxing authority's lack of jurisdiction over the property. Tex.Tax Code Ann. § 42.09(b). Still, the taxing authorities had to prove that GECC was the secured party in possession in or-

der to show themselves entitled to judgment for the taxes on the units.

In addition to the tax rolls, Plaintiffs' Exhibits 38 and 39 were introduced into evidence. Sharon Hennig, marketing support manager for GECC, testified that GECC maintains a computer database on the mobile homes they finance. Exhibits 38 and 39 are hard copies of this database. The documents show a list of units GECC financed and repossessed, the date of repossession, and the date of resale to a third party, if any. GECC argued that it did not possess certain units as of January 1 of certain tax years for which it was assessed. It introduced a series of documents containing the serial numbers of these units. We address them in turn.

■ First, GECC introduced Defendant's Exhibit 1. Hennig testified that GECC never had any type of interest in the units on Defendant's Exhibit 1. No reference to these units could be found in GECC's records. None of the unit serial numbers on Defendant's Exhibit 1 match those on Plaintiffs' Exhibits 38 and 39. The taxing authorities provided no proof that GECC had a security interest in the units or that it was in possession of them. They failed to prove that GECC was the secured party in possession for these units. The evidence is legally insufficient to support judgment against GECC for the thirty units listed in Defendant's Exhibit 1.

■ In addition, there was no evidence that GECC possessed the unit in account 3 on January 1 of the tax year for which it was assessed. Sharon Hennig and Michael Mantz agreed that the unit assessed in account 3 was not in GECC's possession in 1985. Judgment against GECC for taxes on this unit was incorrect.

Defendant's Exhibit 2 listed units that had been sold to individual purchasers before January 1 of the tax year in question. GECC admits it had a security interest in these units. However, the majority of the units were not taxable to GECC for every one of the years assessed. The exhibit shows that GECC did not possess a number of the units as of January 1 of the year assessed. The taxing authorities offered no further proof that GECC possessed the units on January 1. Judgment against GECC for these taxes was not supported by legally sufficient evidence. While there are units for which the evidence is both legally and factually sufficient to support judgment, we cannot render judgment on these because we are unable to determine from the record before us the proper amount of taxes owed. We therefore remand the cause to the trial court for a determination of the proper amount of taxes on units for which GECC was the secured party in possession as of January 1 of the tax year for which the unit was assessed, as shown by exhibit 2.

In the same way, GECC also introduced Defendant's Exhibit 3. It showed six units which GECC claimed were not repossessed until after January 1 of the tax year in question. We remand to the trial court for a determination of the amount of tax owed on the units for which GECC was the secured party in possession as of January 1 of the appropriate tax years.

■ Defendant's Exhibit 4 lists 49 units, in which GECC claimed it had no interest. The document contained serial numbers of units GECC claimed were owned by dealerships under special financing agreements. GECC also introduced copies of the financing agreements. Under the contracts, GECC agreed to purchase certain individual buyers' accounts from the dealerships. If the buyer defaulted on the note, the agreement provided that the dealership would, upon GECC's demand, buy back the account. GECC argues that the dealership agreements represented full recourse loans. Upon the buyer's default, the dealership paid off the note and became the owner of the unit. GECC avers that Defendant's Exhibit 4 sufficiently rebutted the taxing authorities' claim that GECC owned those units at that time. We agree. However, Defendant's Exhibit 7 shows that GECC came into possession of some of these units after the dealerships went out of business. Most of those units were repossessed by GECC from defaulting dealerships in August or September of 1986. Thus, they became taxable to GECC for

years 1987 to 1988. We remand to the trial court for a determination of the amount of taxes owed on these units.

There is no evidence that GECC was the secured party in possession for the units in account numbers 7 and 8. Therefore, entry of judgment upon this account was improper.

■ GECC also introduced Defendant's Exhibit 5, listing 104 units which were repossessed from customers. GECC admits in its brief that it "held" the units "as a secured party on the January 1 in question." Such admission is sufficient evidence to impose judgment against GECC for taxes for the year listed. However, two of the units were taxed for tax years 1986 to 1987. Yet the taxing authorities produced no evidence showing that these units were possessed by GECC as of January 1, 1986. Thus, there is no evidence to show that GECC was the secured party in possession for 1986. Taxation of the remainder of these units was proper so long as taxes were only assessed for the year following the date of repossession. We remand to the trial court for a reassessment of the amount of taxes properly owed by GECC.

For the units in account number 5 which have not yet been addressed by reference to GECC's exhibits, we note that the taxing authorities showed (by PX–38 & 39) that GECC did possess certain of these units as of January 1 for some of the tax years in question. Where this is shown, the evidence is sufficient to support judgment against GECC. Judgment is improper with regard to those units where no such evidence is shown. Once again, we remand to the trial court for a determination of the proper amount of taxes owed on those units for which GECC was shown to be the secured party in possession.

■ The units for which we have found the evidence insufficient are scattered throughout the accounts containing multiple units. The taxing authorities maintain that, for those accounts containing a single, grand total assessment upon multiple units, GECC was required to prove that it did not own each and every unit in the account in order to show it was not responsible for the tax assessed on that account. We disagree. It is true that the Tax Code allows the Appraisal District to assess multiple units of property, such as inventory, in a single account. Further, it is true that such an assessment may be an "act against the taxpayer's interest" which must be challenged by the taxpayer through the administrative process. TEX.TAX CODE ANN. § 41.41(9) (Vernon 1992). However, the legislature amended § 42.09 of the Tax Code in response to *Robstown Indep. School Dist. v. Anderson*, 706 S.W.2d 952 (Tex.1986), thus making it clear that it desires the taxpayer to always have available the defense that he did not own the property. Assessing taxes against a party who has no ownership interest in the property would always be an action which "adversely affects the property owner." We conclude that the clear intent of § 42.09 as evidenced by the legislature's amendment after *Robstown* would be frustrated by the taxing authorities' reading of the statute.

We find that the evidence is sufficient to impose tax liability upon GECC as a secured party in possession for the units as addressed in the text above. Due to the fact that these units were assessed en masse in various accounts, we remand the cause to the trial court for determination of the amount of taxes owed for the years for which GECC's evidence of non-ownership was insufficient.

The judgment of the trial court is RENDERED in part for GECC; the balance of the judgment is REMANDED in part to the trial court for determination of the correct amount of money owed in accordance with this opinion.

## OPINION ON MOTION FOR REHEARING

The taxing authorities argue on this motion for rehearing that this court erroneously suggests that GECC could have asserted a situs defense when such defense is not available in a personal property case. We agree. We not hereby disapprove of our language in the opinion intimating as

such. Both parties' motions for rehearing are otherwise overruled.