COMERICA ACCEPTANCE CORP., Appellant,

v.

DALLAS CENTRAL APPRAISAL DISTRICT and Appraisal Review Board of Dallas County, Appellees.

No. 05–99–00266–CV.

Court of Appeals of Texas, Dallas.

July 31, 2001.

Mike D. Gibbs, Dallas, for appellant.

John F. Roehm, III, Jason Clarke Marshall, Nichols Jackson Dillard Hager & Smith, L.L.P., Dallas, for appellee.

## OPINION

MOSELEY, Justice.

In this case, we are called on to define the term "owner" for purposes of determining liability for ad valorem taxes on personal property. We hold that a lienholder who, on January 1 of any given year, is in possession of personal property collateral for purposes of selling it in foreclosure of its lien, is not by that reason liable as a matter of law for ad valorem taxes on the property. Thus, we reverse the summary judgment entered by the trial court against appellant, Comerica Acceptance Corp. ("Comerica"), in favor of appellees, the Dallas Central Appraisal District ("DCAD") and the Appraisal Review Board of Dallas County ("Board"), and remand the case to the trial court for further proceedings.

### BACKGROUND

The facts of this case are not in dispute. Pursuant to retail installment contracts and security agreements, Comerica held a security interest in a number of motor vehicles and boats. The debtors on those retail installment contracts defaulted, so Comerica obtained possession of its collateral and had the property taken to an auction house, where it was to be sold after Comerica had given the required notices to the debtors.

However, some of Comerica's repossessed or returned collateral had not been sold as of January 1 of tax years 1996, 1997, and 1998, and thus remained in Comerica's effective possession on those dates. DCAD took the position that Comerica was the "owner" of the personal property collateral in its possession on those dates, and levied ad valorem taxes for those years against Comerica, based on the fair market value of its unsold collateral. Comerica filed a protest with the Board. The Board upheld the tax levies, agreeing with DCAD that Comerica was the owner of the property for ad valorem tax purposes.

Comerica sued DCAD and the Board (collectively "the District"), appealing the Orders Determining Protest entered by the Board concerning the appraised value and the ownership of the personal property in dispute. The District moved for partial summary judgment regarding Comerica's status as "owner" of the subject property. The trial court granted the motion, concluding as a matter of law that Comerica was the owner of the subject property for purposes of assessing ad valorem taxes. The parties stipulated as to the only remaining issue, which was the market value of the subject property for tax years 1996, 1997, and 1998. Based on the partial summary judgment and the parties' stipulation, the trial court rendered a final judgment in favor of the District on February 26, 1999. In its sole issue, Comerica argues that it was not the "owner" of the subject motor vehicles and boats on January 1 of the given tax years, and thus was not liable for the ad valorem taxes levied against the property by the District.

## Discussion

■ Under the Texas Tax Code, "property taxes are the personal obligation of the person who owns or acquires the property on January 1 of the year for which the tax is imposed." Tex. Tax Code Ann. § 32.07(a) (Vernon Supp.2001). The tax code, however, does not define the term "owner." The District contends that, as a matter of law, a secured party in possession of collateral as of the first day of the tax year is the owner of the property within the meaning of section 32.07(a), and is thus liable for ad valorem taxes on the property. Comerica contends possessing personal property collateral on January 1, in anticipation of selling it in foreclosure of a security interest, does not make a lienholder the "owner" of the property on that date; thus it contends it is not liable for ad valorem taxes based on the collateral's value.

■ We construe tax statutes strictly against the taxing authority and liberally in favor of the taxpayer. *See Dallas Cent. Appraisal Dist. v. Park Stemmons, Ltd.*, 948 S.W.2d 11, 13 (Tex.App.—Dallas 1997, no writ). Furthermore, when a term is not defined in a statute, we give it its ordinary meaning. *See* Tex. Gov't Code Ann. § 312.002 (Vernon 1998); *City of Dallas v. Cornerstone Bank*, 879 S.W.2d 264, 270 (Tex.App.—Dallas 1994, no writ).

Interpreting "owner" to include a secured party in possession of property for purposes of selling it to recover on a debt does not comport with these rules of statutory construction. Simply stated, a lienholder is not an "owner" of the property within the common meaning of that term. Typically the lienholder does not enjoy any of the common benefits of property ownership. A lienholder ordinarily has no legal right to share in any accretions to the collateral's value, or a legal obligation to bear any risk of lost value. A lienholder ordinarily has no right to possession or use of the property; what rights it has to use and possession are only in the context of its right to take possession of its collateral upon default and sell it pursuant to the security agreement. Thus, to broaden the term "owner" to include all lienholders in possession of collateral would require us to liberally construe the statute in favor of the taxing authority and against the taxpayer. Such an interpretation would be contrary to the accepted rules of construction.

■ True to the rules of construction relating to tax statutes, we employ a more common definition of "owner." Specifically, we construe the term "owner," as used in section 32.07 of the Texas Tax Code, as a person or entity holding legal title to the property, or holding an equitable right to obtain legal title to the property. *See, e.g.*, Tex. Tax Code Ann. § 152.001(9) (Vernon Supp.2001). This common definition of "owner" would not encompass a lienholder who takes possession of personal property collateral for the purpose of selling it pursuant to a security agreement.

There are also public policy reasons opposing the District's interpretation. First, assessing ad valorem taxes against a lienholder in possession of the property in anticipation of a foreclosure sale could result in taxing the lienholder based on a value greater than what the secured party could legally recover from selling the property. Ad valorem taxes are generally based on the market value of personal property. *See id.* § 23.01. However, a secured party who forecloses on property may only retain the amount of sales proceeds sufficient to satisfy the remaining debt and certain expenses; any sales proceeds in excess of those amounts must be returned to the debtor. *See* Tex. Bus. & Com.Code Ann. § 9.504(b) (Vernon 1991). Thus, while the secured party could only

legally retain proceeds that may represent only a portion of the market value, the secured party would be assessed ad valorem taxes based on the entire market value of the property.

Second, if the lienholder in possession receives payment of the remaining amounts owed against the property, the lienholder must relinquish possession of the property to the record owner. *See id.* § 9.506. Therefore, if the secured party possessed the property on January 1, and the record owner paid off the liability secured by the property, on January 2, under the District's suggested interpretation, the secured party would still be liable for the ad valorem taxes on the personal property owned, possessed, and enjoyed by the record titleholder.

■ Yet another public policy consideration undercuts the District's proposed interpretation of "owner" as including a lienholder possessing personal property collateral in anticipation of a foreclosure sale. As admitted by the District during oral argument, such an interpretation could result in property having two owners for tax purposes—the nominal owner as well as the lienholder—both of which would presumably be liable for the ad valorem tax. This consideration is especially applicable to motor vehicles and boats, which are subject to certificate of title statutes. *See* TEX. PARKS & WILD.CODE ANN. §§ 31.036, .045, .053 (Vernon Supp.2001); TEX. TRANSP. CODE ANN. § 501.071 (Vernon 1999). Under those statutes, certificates of title create a presumption of ownership in the party named on the title certificate. *See Tyler Car & Truck Ctr. v. Empire Fire & Marine Ins. Co.*, 2 S.W.3d 482, 485 (Tex.App.—Tyler 1999, pet. denied). A transfer of title is only effectuated by complying with the provisions set forth in the various statutes relating to certificates of title. *See* TEX. PARKS & WILD.CODE ANN.

§ 31.053; TEX. TRANSP. CODE ANN. § 501.073. Thus, the District's proposed construction would permit the District to levy ad valorem taxes on the "record" owner of the property as well as a lienholder who happened to possess the property on January 1 of a tax year in anticipation of foreclosing its security interest by selling the personal property collateral.

These public policy considerations weigh in favor of applying a common definition of an owner as being a person or entity holding legal title to the property, or holding an equitable right to obtain legal title to the property.

The District cites *General Electric Capital Corp. v. City of Corpus Christi*, 850 S.W.2d 596 (Tex.App.—Corpus Christi 1993, writ denied), to support its argument. In *General Electric*, the Corpus Christi court held that "for purposes of ad valorem taxation, the secured party in possession is the equivalent of title owner." *Id.* at 599. In reaching this conclusion, the Corpus Christi court cited no supporting authority, nor did it provide any meaningful analysis. The District also relies on *State v. Lincoln Corp.*, 596 S.W.2d 593 (Tex.App.—Beaumont 1980, writ ref'd n.r.e.). *Lincoln* involved the repossession and taxation of mobile homes. The court stated that "[o]wnership of the property was not shown to be in [the secured creditor] until it repossessed the homes." *Id.* at 595. This statement was not central to the court's holding in that case, and, therefore, remains dicta. Moreover, like the *General Electric* court, in reaching its conclusion, the *Lincoln* court cited no supporting authority, nor did it provide any meaningful analysis. Because we are unpersuaded by the *ipse dixit* proclamations set forth in *General Electric* and *Lincoln*, we decline to follow them.

### CONCLUSION

The trial court granted summary judgment upon undisputed evidence that Comerica was a lienholder in possession of the subject personal property on January 1 of the relevant tax years for the purpose of auctioning the property to satisfy the remaining debt owed. We conclude that such evidence does not prove as a matter of law that Comerica was the "owner" of the subject property for purposes of assessing ad valorem taxes. Consequently, we reverse the trial court's judgment and remand this cause for further proceedings.

LAGARDE, J., dissenting.

LAGARDE, Justice, Dissenting.

I disagree with the majority's holding that Comerica is not an "owner" of the property for purposes of ad valorem taxation. Accordingly, I respectfully dissent.

The majority supports its holding on the following public policy considerations:

1. The lienholder would be taxed on the market value of the property but "may only retain the amount of sales proceeds sufficient to satisfy the remaining debt and certain expenses"; and

2. "if the lienholder in possession receives payment of the remaining amounts owed against the property, the lienholder must relinquish possession of the property to the record owner."

The legislature has solved this dilemma. As the majority states, the lienholder may retain the sales proceeds sufficient to cover "certain expenses." One of the "certain expenses" that the lienholder may recover from the sale price of the collateral—or that the debtor/title owner is liable for on redemption of the collateral—is the "payment of taxes . . . incurred in the custody, preservation, use or operation of the collateral." TEX. BUS. & COM.CODE ANN. § 9.207(b)(1) (Vernon 1991);[1] *see id.* §§ 9.504(a)(1) & 9.506.

The majority's third public policy consideration is the possibility that both the debtor/title owner and the lienholder in possession could be liable for the property taxes. The majority provides no analysis explaining why this is a problem. Under article 9 of the business and commerce code, the debtor/title owner is liable to the lienholder for any taxes paid by the lienholder; and the taxes, as a "reasonable expense," are secured by the collateral. Thus, the lienholder has recourse for any tax payments it makes on the collateral. To the extent the majority is concerned about the liability of the debtor/title owner against the taxing authority for the taxes, those rights are not the subject of this appeal and are irrelevant to whether the lienholder in possession may be considered an owner by the tax assessor.

The lienholder has an obvious means to protect itself from being assessed ad valorem taxes on its repossessed collateral: it can manage its business in such a manner that it is not in possession of collateral on January 1.

The majority's public policy considerations do not support holding that a lienholder in possession is not an "owner" under the ad valorem taxation statute. I do not perceive any public policy support for the majority's holding.

---

1. In 1999, the legislature amended article 9 of the business and commerce code. *See* Act of May 17, 1999, 76th Leg., R.S., ch. 414, § 1.01, 1999 Tex. Gen. Laws 2639–2736. The amendments took effect July 1, 2001. *See id.* § 3.01, 1999 Tex. Gen. Laws at 2747. The amendments do not apply to proceedings commenced before their effective date. *See id.* § 3.02(c), 1999 Tex. Gen. Laws at 2748. The references in this opinion to the business and commerce code are to the version of article 9 in effect before July 1, 2001.

The majority refuses to follow the holding of the Corpus Christi Court of Appeals that "the secured party in possession is the equivalent of title owner" because the Corpus Christi court cites no supporting authority for its holding. *See Gen. Elec. Capital Corp. v. City of Corpus Christi,* 850 S.W.2d 596, 599 (Tex.App.—Corpus Christi 1993, writ denied). In fact, the Corpus Christi court cites a Texas Supreme Court case, *Childress County v. State,* 127 Tex. 343, 92 S.W.2d 1011 (1936). *See Gen. Elec. Capital Corp.,* 850 S.W.2d at 599. In *Childress County,* the supreme court stated,

> The person having legal title to property is generally considered to be the owner thereof for purposes of taxation.... If he is the record owner, or is vested with the apparent legal title, *or is in possession thereof,* coupled with such claims and evidences of ownership as will justify the assumption that he is the owner thereof, the assessor will be justified in assessing the property for taxation against such owner.

*Childress County,* 127 Tex. at 349–50, 92 S.W.2d at 1015 (emphasis added), *quoted in Gen. Elec. Capital Corp.,* 850 S.W.2d at 599. Contrary to the majority, I consider the opinions of the Texas Supreme Court to be not merely some authority but controlling authority.

Under the supreme court's direction in *Childress County,* we determine whether the assessor is justified in assessing the property tax against a lienholder in possession by considering the lienholder's "claims and evidences of ownership." Of course, Comerica does not make a subjective "claim" of ownership. There are, however, objective "evidences of ownership." As a lienholder in possession of collateral following default by the debtor/title owners, Comerica's rights in the repossessed property on January 1 of the tax years are at least equal to those of the debtor/title owners. Comerica had possession of the vehicles; the debtor/title owners did not. Comerica had the right, if not the obligation, to sell the property; the debtor/title owners could not sell the property. Comerica had input as to the price at which the vehicles were offered at auction; the debtor/title owners did not. Comerica had input as to what auctioneers were used to sell the vehicles; the debtor/title owners did not. And, perhaps even more importantly, Comerica had possession of the certificates of title and later signed off on those certificates as the seller of the vehicles; the debtor/title owners did not. The debtor/title owners could force Comerica to return the property, but only by paying Comerica the amount of the outstanding debt and Comerica's reasonable expenses, *including* any taxes Comerica paid on the property. With the consent of the debtor/title owners, Comerica could keep the property with all the debtor/title owners' interest in the collateral in satisfaction of the debt. *See* TEX. BUS. & COM.CODE ANN. § 9.505(b) (Vernon 1991). It is undisputed that Comerica was in possession of the vehicles. Based on the record, I conclude that Comerica's possession is "coupled with such claims and evidences of ownership as will justify the assumption that [it] is the owner thereof" and that "the assessor [was] justified in assessing the property for taxation against" Comerica. *Gen. Elec. Capital Corp.,* 850 S.W.2d at 599 (quoting *Childress County,* 127 Tex. at 349–50, 92 S.W.2d at 1015).

I would affirm the trial court's judgment holding Comerica was an owner of the property at issue for the purposes of ad valorem taxation. Because I disagree with the majority's holding that Comerica is not an "owner" under section 32.07(a) of the tax code, I respectfully dissent.