**Affirmed and Opinion Filed November 6, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01429-CV

### ELIZABETH BLUME, Appellant
### V.
### WELLS FARGO BANK, N.A., Appellee

**On Appeal from the County Court at Law**
**Rockwall County, Texas**
**Trial Court Cause No. 1-12-1012**

## MEMORANDUM OPINION

Before Justices Francis, Fillmore, and Myers
Opinion by Justice Francis

Elizabeth Blume appeals the trial court's summary judgment in favor of Wells Fargo Bank, N.A. Blume claims Well Fargo breached its agreement to pay the 2011 property taxes on a home she bought in February 2011 and is unjustly enriched as a result. We affirm.

Richard Boyd bought a home at 144 Old Vineyard Lane in Rockwall, financed with a mortgage loan from Wells Fargo. After he failed to make several mortgage payments, Boyd contacted Wells Fargo to discuss possible mitigation options, including selling the property for less than the amount owed (a "short sale"). In late October, 2010, Boyd entered into a residential contract with Blume who agreed to buy the property. Because the amount Blume offered was less than the amount of Boyd's mortgage loan, Wells Fargo had to approve the sale which it did in a January 21, 2011 letter entitled "Short Sale Approval."

Under the terms of the sales contract, Boyd, as seller, and Blume, as buyer, agreed that "[t]axes for the current year . . . will be prorated through the Closing Date. . . If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year." About a month before the February 25, 2011 closing, Boyd and Blume signed an amendment to the sales contract that stated, "No 2011 taxes will be prorated at closing."

After closing, Blume paid the 2011 property taxes of $14,364.96, then sought reimbursement from Wells Fargo. Blume claimed she was entitled to reimbursement because she was not the property owner on January 1, 2011. When Wells Fargo declined to reimburse her, she sued for breach of contract, equitable subrogation/unjust enrichment, and money had and received. Specifically, Blume alleged that, "[p]ursuant to the valid agreement of the parties, [Wells Fargo] is obligated to pay [Blume] the full amount of the 2011 real property taxes." Wells Fargo filed a general denial, followed by a no evidence and traditional motion for summary judgment on each of the causes of action Blume raised. Blume also filed a motion for summary judgment and a response to Wells Fargo's motion. The trial court granted summary judgment in Wells Fargo's favor. This appeal followed.

In her brief, Blume contends the trial court erred by granting summary judgment in Wells Fargo's favor. Blume asserts Wells Fargo held equitable title to the property on January 1, 2011 and was therefore liable for the 2011 property taxes. Blume also contends Wells Fargo breached its agreement to pay the taxes.

A party may move for summary judgment on the ground there is no evidence of one or more essential elements of a claim or defense on which the adverse party would have the burden of proof at trial. *LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex. 2006) (per curiam). Unless the respondent produces summary judgment evidence raising a genuine issue of material fact, the

court must grant the motion. TEX. R. CIV. P. 166a(i); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex. 2002).

To succeed in a traditional motion for summary judgment, the movant must establish there are no genuine issues of material fact and it is entitled to judgment as a matter of law. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). In reviewing a summary judgment, we consider the evidence in the light most favorable to the nonmovants and resolve any doubt in their favor. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). Where, as here, the trial court's order granting summary judgment does not specify the basis for the ruling, we must affirm the trial court's judgment if any of the theories advanced are meritorious. *W. Invs., Inc.*, 162 S.W.3d at 550.

Blume argues the trial court erred by granting summary judgment because Wells Fargo breached its binding and enforceable agreement with Blume to pay the taxes.

Whether an alleged agreement constitutes an enforceable contract is generally a question of law. *Searcy v. DDA, Inc.*, 201 S.W.3d 319, 322 (Tex. App.—Dallas 2006, no pet.). The elements of a valid and enforceable contract are: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Id*.

Blume contends she and Wells Fargo had a binding agreement as evidenced by Wells Fargo's January 21, 2011 letter approving the short sale. We disagree. The January letter was an agreement between Boyd and Wells Fargo. The letter is addressed to Boyd and states:

> This Final Short Sale Approval Letter serves to confirm that Wells Fargo Bank, N.A. (Wells Fargo) has approved your request for a short sale of the above-referenced Property, and is *an agreement between you and Wells Fargo* as to the terms of the short sale of the Property.

(Emphasis added.) The letter is signed by a representative of Wells Fargo and Boyd. Although Blume is mentioned as the buyer, nothing in the letter suggests or establishes she is a party to the agreement. Furthermore, the letter does not make any reference to the payment of property taxes. In light of this, we reject Blume's contention that she had a binding agreement with Wells Fargo regarding payment of the 2011 property taxes.

Moreover, the summary judgment record establishes Blume had a contract with Boyd. The record contains the residential contract, signed by Blume and Boyd, in which Blume agrees to purchase Boyd's house. The contract specifically provides:

> 13. PRORATIONS: Taxes for the current year, interest, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. *If taxes are not paid at closing or prior to closing, Buyer shall pay taxes for the current year*.

(Emphasis added.) Boyd and Blume later signed an amendment to the contract agreeing "[n]o 2011 taxes will be prorated at closing." This amendment does not affect Blume's contractual obligation to Boyd to "pay taxes for the current year" if taxes were not paid at or before closing. The summary judgment evidence shows Blume had a contract with Boyd, but not with Wells Fargo. Furthermore, under the terms of the contract with Boyd, Blume was responsible for the 2011 taxes if the taxes were not paid at or before closing. We conclude the trial court did not err by granting summary judgment in favor of Wells Fargo on Blume's breach of contract claim.

Blume's remaining issues involve her contention that Wells Fargo was the de facto or equitable owner of the property on January 1, 2011 and, therefore, owed the 2011 property taxes. Blume bases her argument on the fact that Wells Fargo was the mortgage lienholder and, because Boyd was delinquent, Wells Fargo could have foreclosed on the property as of January 1, 2011.

–4–

Under the Texas Tax Code, "property taxes are the personal obligation of the person who owns or acquires the property on January 1 of the year for which the tax is imposed." TEX. TAX CODE ANN. § 32.07(a) (West 2008). The tax code, however, does not define the term "owner." In *Comerica Acceptance Corp. v. Dallas Central Appraisal District,* this Court construed the term "owner" to mean the person or entity holding legal title to the property or holding an equitable right to obtain the same. 52 S.W.3d 495, 497 (Tex. App.—Dallas 2001, pet. ref'd). Nevertheless, we specifically concluded an owner was not a lienholder who takes possession of the property for purposes of selling it under a security agreement. *Id*. Likewise, an owner is not a lienholder simply because it could foreclose on real property but has not done so. *See id*. at 498 ("such an interpretation could result in property having two owners for tax purposes—the nominal owner as well as the lienholder—both of which would presumably be liable for" the taxes).

In this case, although Blume claims Wells Fargo was the equitable owner on January 1, 2011, the summary judgment evidence shows Boyd held legal title to the property as of that date. Wells Fargo did not have any legal obligation to pay the 2011 taxes. Blume contracted to buy the house from Boyd and agreed to pay the "taxes for the current year." We conclude the trial court did not err by granting summary judgment in favor of Wells Fargo on Blume's claims for breach of contract, equitable subrogation/unjust enrichment and money had and received.

We affirm the trial court's judgment.


131429F.P05

/Molly Francis/
MOLLY FRANCIS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ELIZABETH BLUME, Appellant

No. 05-13-01429-CV     V.

WELLS FARGO BANK, N.A., Appellee

On Appeal from the County Court at Law, Rockwall County, Texas
Trial Court Cause No. 1-12-1012.
Opinion delivered by Justice Francis, Justices Fillmore and Myers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee WELLS FARGO BANK, N.A. recover its costs of this appeal from appellant ELIZABETH BLUME.

Judgment entered November 6, 2014.