ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

May 12, 2003

The Honorable Michael J. Guarino
Criminal District Attorney
Galveston County
722 Moody, Suite 300
Galveston, Texas 77550

Opinion No. GA-0070

Re: Whether, under chapter 271 of the Texas Local Government Code, Galveston County may use design-build contracts and lease-purchase agreements to construct thermal energy plants for building complexes (RQ-0630-JC)

Dear Mr. Guarino:

Your questions stem from Galveston County's plans to construct two thermal energy plants. You ask whether, under chapter 271 of the Local Government Code, Galveston County (the "County") may use design-build contracts and lease-purchase agreements to pursue these construction projects.

You state that one of the proposed plants would chill and heat water for the current courthouse and jail complex, requiring the renovation of the existing buildings' heating and air conditioning systems. The other proposed plant would serve the new Justice Administration Building and Jail Complex, still in the planning stages. The County "owns fee simple title to the land" where each thermal plant will be built.[1]

## I.      Design-Build Contracts

You first ask whether, under the statutes, the County may opt for the design-build method of construction, whereby the County would employ a single firm to design and build the plants. Traditional construction methods, by contrast, call for separate contracts for design and construction. *See generally* Tex. Att'y Gen. Op. No. JM-1189 (1990) (distinguishing design-build contracts from the traditional arrangement). Following the traditional method, a county engages an architect or engineer to design the project and, in a separate agreement, retains a contractor to construct it. *Id.* at 2. Design and construction contracts are each awarded according to its own applicable criteria. A county must select a design professional based on competence and qualifications, and must not

---

[1]Letter from Honorable Michael J. Guarino, Criminal District Attorney, Galveston County, to Honorable John Cornyn, Texas Attorney General at 1 (Nov. 15, 2002) (on file with Opinion Committee) [hereinafter Request Letter].

use competitive bidding. *See* TEX. GOV'T CODE ANN. § 2254.003 (Vernon 2000); Tex. Att'y Gen. Op. No. JC-0374 (2001) at 1, 4. Competitive bidding, however, is the traditional method for selecting a contractor, with the contract going to the responsible bidder who submits the lowest and best bid. *See* TEX. LOC. GOV'T CODE ANN. § 262.027(a)(1) (Vernon Supp. 2003).

In 2001, the legislature added subchapter H to the Local Government Code, entitled "Alternative Project Delivery Methods for Certain Projects." Act of May 27, 2001, 77th Leg., R.S., ch. 1409, § 5, 2001 Tex. Gen. Laws 3619, 3621-29. Subchapter H allows counties and other entities to opt for the construction method that will provide them the "best value," which may include a design-build contract. *See* TEX. LOC. GOV'T CODE ANN. § 271.113(a)(3) (Vernon Supp. 2003). To qualify, a project must be a "facility," as that term is defined:

> (7) "Facility" means buildings the design and construction of which are governed by accepted building codes. The term does not include:
>
> (A) highways, roads, streets, bridges, utilities, water supply projects, water plants, wastewater plants, water and wastewater distribution or conveyance facilities, wharves, docks, airport runways and taxiways, drainage projects, or related types of projects associated with civil engineering construction; or
>
> (B) buildings or structures that are incidental to projects that are primarily civil engineering construction projects.

*Id.* § 271.111(7)(A)-(B).

You state that the buildings that will house the thermal plants will be subject to state and local building codes, consistent with the definition of a "facility," but you query whether the projects would be excluded from the definition under subsections (7)(A) and (7)(B). Central to the exclusions in both subsections is the concept of "civil engineering construction." Because the Local Government Code does not define the phrase, we may consider it according to common usage and any technical meaning it may have acquired. TEX. GOV'T CODE ANN. § 311.011(a)-(b) (Vernon 1998). Doing so, however, does little to define the scope of the exclusions. As the term is understood in the profession, "civil engineering" would encompass virtually all governmental construction endeavors, and include the construction of most governmental buildings. One reference work describes civil engineering as "that field of engineering concerned with planning, design, and construction for environmental control, natural resource development, transportation facilities, tunnels, *buildings*, bridges, and other structures for the needs of people." FREDERICK S. MERRITT ET AL., STANDARD HANDBOOK FOR CIVIL ENGINEERS 1-1 (4th ed. 1996) (emphasis added). Also, by statute, an engineer must be involved in the planning of most buildings constructed for a governmental entity. TEX. OCC. CODE ANN. § 1001.407 (Vernon 2003). Consequently, the term "facility" cannot exclude all projects associated with, or incidental to, all civil engineering projects

because that definition would exclude nearly all governmental buildings. Under that interpretation, the exception would swallow the general rule.

Rather, section 271.111(7)(A) must be interpreted to exclude only the types of civil engineering construction projects specifically enumerated: "highways, roads, streets, bridges, utilities, water supply projects, water plants, wastewater plants, water and wastewater distribution or conveyance facilities, wharves, docks, airport runways and taxiways, [and] drainage projects." TEX. LOC. GOV'T CODE ANN. § 271.111(7)(A) (Vernon Supp. 2003). It may not be possible to formulate a comprehensive test to identify projects excluded under subsection (7)(A), but they share certain characteristics. First, the excluded projects would generally not be subject to a comprehensive governmental building code assuring minimum, uniform standards. *See* Steve Nelson, *"Best Value" Procurement for Cities and Counties*, 65 TEX. B. J. 36, 37-38 (2002) (opining that the legislature, concerned that "best value" procurement may not work as well in the absence of established building codes, "enabled best value procurement only on 'vertical' construction projects (buildings, structures, office buildings, etc.), which are generally covered by such codes, and not to 'horizontal' structures (roads, bridges, utilities, etc.), which are not").

Second, the statute suggests that the distinction should be made according to a project's anticipated function. TEX. LOC. GOV'T CODE ANN. § 271.111(7)(A)-(B) (Vernon Supp. 2003). All of the projects specifically excluded in subsection (7)(A) are components of infrastructure facilitating transportation, controlling natural forces, or providing utility, water, and similar essential services, generally for the public at large. Most buildings included in such projects would be subordinate and incidental to the project's principal function. Finally, subsection (7)(B) provides an exception for buildings incidental to a civil engineering construction project, but as discussed above, it cannot mean all civil engineering projects. Accordingly, that subsection must be interpreted to mean buildings incidental to a civil construction project of the type enumerated in subsection (7)(A).

As we understand the County's projects, the thermal plant buildings will house equipment that chill and heat water for the habitability, comfort, and convenience of the associated building complexes, and will not serve the wider public. The thermal plants are in the nature of appurtenances integral to the functions of the building complexes. The thermal plant buildings, and presumably the building complexes that the plants will serve, are subject to accepted building codes. The thermal plants, as you describe them, comply with the definition of "buildings the design of which are governed by accepted building codes," in section 271.111(7). Request Letter, *supra* note 1, at 2. They are not building projects or incidental to projects of the type excluded in subsections (7)(A) or (7)(B). Consequently, the thermal heating plants you describe are "facilities" under chapter 271, and may be the subject of a design-build contract.

## II.     Sale-Lease-Purchase Agreements

You ask next whether the County may procure the plants through a sale-lease-purchase agreement with the contractor. Under such an agreement, the County would either sell or lease the land to the contractor. The agreement would obligate the contractor to design and build the plants, lease them to the County for a twenty-year term and, at the end of the term, convey the plants to the

County for one dollar. The contractor, as owner of the plants, would provide its services for the term of the lease.

A commissioners court has only that authority to contract for the county conferred either expressly or by necessary implication by the constitution and laws of this state. *Childress County v. State*, 92 S.W.2d 1011, 1016 (Tex. 1936); Tex. Att'y Gen. Op. No. JC-0584 (2002) at 17. Chapter 263 of the Local Government Code governs the procedures for a county's sale or lease of real property. TEX. LOC. GOV'T CODE ANN. §§ 263.001-.204 (Vernon 1999 & Supp. 2003). Counties with populations over 500,000 are authorized to sell county property and lease it back. *Id.* § 263.053(b) (Vernon 1999). There is no comparable authority for counties with populations under 500,000, and, as you acknowledge, the County's population does not meet that threshold. Request Letter, *supra* note 1, at 4.

You suggest that the County may possess implied authority to enter into a sale-lease-purchase agreement, based on Attorney General Opinion JM-697. That opinion principally addressed the objection that a lease-purchase agreement would obligate a county beyond the current budget year, "thereby preventing future courts from allocating those funds to other county purposes." Tex. Att'y Gen. Op. No. JM-697 (1987) at 1. Noting that no statute specifically authorized such an agreement, the opinion concluded that "a county has implied authority to enter into a lease-purchase contract to build or acquire a jail, assuming compliance with all applicable constitutional and statutory provisions." *Id.* at 6. JM-697 determined that the county's authority was implied from its constitutional authority to maintain jails. *Id.* at 1-2. However, this office later issued Attorney General Opinion JM-800, which expressly qualified JM-697. Tex. Att'y Gen. Op. No. JM-800 (1987) at 4. In Opinion JM-800, we determined that a county could not use the predecessor to section 271.005(a)(2) of the Local Government Code to acquire a relocatable jail by lease-purchase agreement by characterizing the property as personalty in the agreement. *Id.* at 6. More recently, this office again limited the decision in Attorney General Opinion JM-697, stating that it "recognize[d] political entities' implied authority *only* to acquire public improvements by means other than the issuance of bonds, derived from the governmental entities' express powers to acquire and expend money for those improvements." Tex. Att'y Gen. Op. No. JC-0068 (1999).

Counties with populations under 500,000 do not possess the express authority to sell and lease back, or lease and lease back property for the purpose of building a thermal plant. Nor is such authority necessarily implied from a county's express authority to maintain jails and courthouses. As a result, the County does not have the authority to contract for thermal energy plants through sale-leaseback or lease-leaseback agreements.

Your remaining questions concern how the County could execute such agreements consistent with the provisions of chapter 263 of the Local Government Code regarding the disposition of county property. Given our conclusion that the County does not have the authority to enter into these agreements, we do not address those questions.

## S U M M A R Y

A thermal energy plant built to facilitate a building complex is a 'facility' under subchapter H, chapter 271 of the Texas Local Government Code, so that it may be built using the design-build method of construction. Galveston County does not have implied authority to enter into a sale and leaseback or lease and leaseback of property to acquire a thermal energy plant in connection with a jail facility.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

William A. Hill
Assistant Attorney General, Opinion Committee