Opinion issued October 5, 2006




     










In The
Court of Appeals
For The
First District of Texas 




NO. 01-05-00496-CV




TRQ CAPTAIN’S LANDING L.P., A TEXAS LIMITED PARTNERSHIP
and AMERICAN HOUSING FOUNDATION, A TEXAS NON-PROFIT
CORPORATION, Appellants

V.

GALVESTON CENTRAL APPRAISAL DISTRICT, Appellee




On Appeal from the 10th District Court
Galveston County, Texas
Trial Court Cause No. 04CV0796




O P I N I O N

          Appellants, TRQ Captain’s Landing, L.P. (“TRQ”) and American Housing
Foundation (“AHF”), appeal from an order granting summary judgment in favor of
appellee, Galveston Central Appraisal District (“Appraisal District”). As a result of
the summary judgment entered against them, appellants were unable to claim an
exemption from ad valorem taxes


 they sought for 2003 pursuant to section 11.182(b)
of the Texas Tax Code. See Tex. Tax Code Ann. § 11.182(b) (Vernon 2001). In
two issues on appeal, appellants contend that they were improperly denied the
exemption because (1) section 11.182(b) extends to equitable owners of qualified
property and (2) their application for the exemption was timely filed pursuant to an
exception contained within section 11.436 of the Texas Tax Code. See id. § 11.436
(Vernon Supp. 2005). 
          We reverse and render judgment. 
BACKGROUND 
          This dispute centers around the Captain’s Landing Apartments (“apartments”),
an apartment complex located in Galveston. The apartments were constructed in the
1980s, and, in 1998, they were purchased by TRQ, who acquired them by special
warranty deed from WHUD Real Estate, L.P. (“WHUD”). In December, 2003, AHF
obtained ownership and control of TRQ. AHF’s acquisition of TRQ had the
following structure and tax consequences:
1.TRQ is a Texas limited partnership. Any tax on TRQ’s income
flows through to its partners under federal taxation principles.



 
2.AHF formed CD Captain’s Landing, LLC (“CD”) and became its
sole member. Thus, CD is wholly owned by AHF. 
 
3.CD purchased TRQ and obtained a 100% membership interest in
TRQ’s sole general partner, TRQ Galveston, LLC. 
 
4.CD’s purchase of TRQ was structured such that CD possessed a
99% limited partnership interest in TRQ. The remaining one
percent interest in TRQ was held by TRQ Galveston, LLC, TRQ’s
general partner in which CD possessed a 100% membership
interest.

In sum, following the relevant December 2003 transactions, AHF possessed a 100%
interest in CD, TRQ’s limited partner; CD owned 99% of TRQ and 100% of TRQ
Galveston, LLC; TRQ Galveston, the general partner of TRQ, owned the remaining
1% interest in TRQ; and, at all times, TRQ, through the special warranty deed it
acquired from WHUD, continued to hold legal title to the apartments. 
          The transactions described above were completed on December 30, 2003. That
same day, CD filed an application with the Appraisal District seeking a 2003 ad
valorem tax exemption for the apartments pursuant to section 11.182 of the Texas
Tax Code. See Tex. Tax Code Ann. § 11.182. Section 11.182 allows an
organization qualifying as a Community Housing Development Organization



(“CHDO”) to claim an exemption from ad valorem taxes that would otherwise be
assessed against real property owned by the organization. See id. The pertinent
provision for this dispute is subsection (b), which provides that:
(b) An organization is entitled to an exemption from taxation of
improved or unimproved real property it owns if the organization: 
 
(1) is organized as a community housing development
organization; 
 
(2)meets the requirements of a charitable organization
provided by Sections 11.18(e) and (f);


 
 
(3)owns the property for the purposes of building or
repairing housing on the property to sell without
profit to a low-income or moderate-income
individual or family satisfying the organization’s
eligibility requirements or to rent without profit to
such an individual or family; and 
 
(4)engages exclusively in the building, repair, and sale
or rental of housing as described in Subdivision (3)
and related activities. 

See id. § 11.182(b). 
          AHF, as the attachments demonstrate, is a CHDO, and it is therefore eligible
under section 11.182(b) for ad valorem exemptions on property it owns. CD, against
whom the taxes were assessed, is not a CHDO, nor is either AHF or CD the holder
of legal title to the apartments (as noted, legal title remains in TRQ’s name). 
Recognizing this, CD’s application for the exemption included attachments indicating
that CD was the sole limited partner in TRQ and held a 100% membership interest
in TRQ’s general partner, TRQ Galveston, and that AHF possessed a 100%
membership interest in CD. Thus, CD’s application effectively asserted that because
(1) AHF would be entitled to an exemption for the apartments if it held legal title to
them and (2) AHF owned a full interest in CD, the taxpayer, (3) which owned a full
interest in TRQ, the holder of legal title to the apartments, (4) CD was entitled to the
exemption. In essence, then, the application contended that the exemption should be
imputed through the partnership chain and back to AHF. 
          On April 5, 2004, the Appraisal District denied CD’s application for an
exemption. The Appraisal District’s letter of denial stated that CD’s application had
been rejected because the “applicant does not own the property.” On April 19, 2004,
appellants filed a notice of protest with the Appraisal District challenging its decision
to deny the application. The Appraisal District, after a hearing, denied appellant’s
protest on July 6, 2004. Appellants then brought suit in district court seeking judicial
review of the Appraisal District’s denial of their application. Appellants’ original
petition asserted that the Appraisal District erred in concluding that AHF did not own
the apartments, and it sought a declaratory judgment delineating appellants’ rights
under section 11.182 of the Texas Tax Code.



          The Appraisal District moved for summary judgment in October 2004,
contending that it was entitled to judgment as a matter of law because (1) CD was not
a CHDO and did not own the apartments and (2) CD’s application for the exemption
was not timely filed. Appellants filed an amended cross-motion for partial summary
judgment in February 2005. Appellant’s cross-motion asked the trial court to enter
judgment finding (1) that the exemption application was timely filed pursuant to
Texas Tax Code 11.436


 and (2) that AHF was the owner of the apartments for the
purposes of section 11.182. See id. § 11.182. In April 2005, the trial court granted
the Appraisal District’s motion for summary judgment and denied appellant’s cross-motion for partial summary judgment. This appeal followed. DISCUSSION
          Appellants present two issues on appeal: (1) whether equitable owners of
property may obtain ad valorem tax exemptions pursuant to section 11.182(b) of the
Texas Tax Code and (2) whether section 11.436 of the Texas Tax Code provides an
exception extending the filing deadline for organizations which acquire property that
qualifies for a section 11.182 exemption to file an application for the exemption. 
          Standard of Review
1. Summary Judgment
            Summary judgment is a question of law. Provident Life & Accident Ins. Co.
v. Knott, 128 S.W.3d 211, 216 (Tex. 2003). Thus, we review a trial court’s summary
judgment decisions de novo. Id. at 215. The standard of review for a traditional
summary judgment motion is threefold: (1) the movant must show that there is no
genuine issue of material fact and that it is entitled to judgment as a matter of law; (2)
in deciding whether there is a disputed material fact issue precluding summary
judgment, the court must take evidence favorable to the nonmovant as true; and (3)
the court must indulge every reasonable inference in favor of the nonmovant and
resolve any doubts in the nonmovant’s favor. Tex. R. Civ. P. 166a(c); Pustejovsky
v. Rapid-Am. Corp., 35 S.W.3d 643, 645–46 (Tex. 2000); Nixon v. Mr. Prop. Mgmt.
Co., 690 S.W.2d 546, 548–49 (Tex. 1985). A defendant seeking summary judgment
must as a matter of law negate at least one element of each of the plaintiff’s theories
of recovery or plead and prove each element of an affirmative defense. Missouri Pac.
R.R. v. Lely Dev. Corp., 86 S.W.3d 787, 790 (Tex. App.—Austin 2002, pet. dism’d). 
If a trial court’s order granting summary judgment does not specify the basis for the
court’s ruling, as is the case here, the summary judgment will be affirmed if any of
the theories advanced by the movant is meritorious. Carr v. Brasher, 776 S.W.2d
567, 569 (Tex. 1989). 
          When both sides move for summary judgment and the trial court grants one
motion but denies the other, we review all of the evidence, determine all questions
presented, and render the judgment the trial court should have rendered.
Commissioners Court of Titus County v. Agan, 940 S.W.2d 77, 81 (Tex. 1997). 
However, “[b]efore an appellate court may reverse summary judgment for one party
and render judgment for the other party, all parties must have sought final judgment
relief in their cross-motions for summary judgment.” Montgomery v. Blue Cross &
Blue Shield of Texas, Inc., 923 S.W.2d 147, 152 (Tex. App.—Austin 1996, writ
denied). 
2. Statutory Interpretation
          Resolving the issues on appeal requires interpreting sections 11.436 and 11.182
of the Texas Tax Code. Statutory interpretation is a question of law. In re Canales,
52 S.W.3d 698, 701 (Tex. 2001). Our primary goal is to ascertain and effectuate the
legislature’s intent. Albertson’s, Inc. v. Sinclair, 984 S.W.2d 958, 960 (Tex. 1999). 
In doing so, we begin with the statute’s plain language because we assume that the
legislature tried to say what it meant and, thus, that its words are the surest guide to
its intent. Fitzgerald v. Advanced Spine Fixation Sys., Inc., 996 S.W.2d 864, 865–66
(Tex. 1999). In ascertaining legislative intent, we do not confine our review to
isolated statutory words, phrases, or clauses, but we instead examine the entire act.
Meritor Auto., Inc. v. Ruan Leasing Co., 44 S.W.3d 86, 90 (Tex. 2001). We may also
consider, among other things, whether or not the statute is ambiguous, the statute’s
objectives, the circumstances under which the statute was enacted, legislative history,
common law, former law, similar provisions, and the consequences of the statutory
construction. See Tex. Gov’t Code Ann. § 311.023(1)-(5) (Vernon 2005). A court
of appeals should presume the legislature intended a just and reasonable result in
enacting a statute. Segal v. Emmes Capital, L.L.C., 155 S.W.3d 267, 287 (Tex.
App.—Houston [1st Dist.] 2004, pet. denied). An appellate court should not construe
a statute in a manner that will lead to a foolish or absurd result when another
alternative is available. University of Tex. S.W. Med. Ctr. at Dallas v. Loutzenhiser,
140 S.W.3d 351, 356 n.20 (Tex. 2004) (quotations omitted). In addition, statutes
conferring tax exemptions are to be strictly construed in favor of the taxing authority. 
North Alamo Water Supply Corp. v. Willacy County Appraisal Dist., 804 S.W.2d 894,
899 (Tex. 1991). 

Whether an Equitable Title Holder May Claim a Tax Exemption Pursuant
to Section 11.182(b)

          In their first issue on appeal, appellants contend the Texas Tax Code allows an
equitable owner to claim the exemptions provided by section 11.182(b) of the Texas
Tax Code. Flowing from this contention, appellants aver that (1) AHF equitably
owns the apartments through its 100% membership interest in CD; (2) AHF meets the
requirements of section 11.182(b); and, therefore, (3) the trial court erred by
upholding the Appraisal District’s denial of CD’s application for an exemption. The
Appraisal District, conversely, argues that the exemption may only be claimed when
an organization holds legal title to the property for which the exemption is sought. 
According to the Appraisal District, (1) TRQ is the record owner of the apartments
and is vested with legal title, and, therefore, (2) CD’s application was properly
denied. 
          Typically, ad valorem tax liabilities fall on the entity holding legal title to a
given property. See Childress County v. State, 92 S.W.2d 1011, 1015 (Tex. 1936)
(holding that the holder of legal title is owner of property for taxation purposes). 
Texas courts, however, recognize that, in certain instances, an entity “holding
equitable title to the property may be the owner for taxation purposes.” Travis Cent.
Appraisal Dist. v. Signature Flight Support Corp., 140 S.W.3d 833, 840 (Tex.
App.—Austin 2004, no pet.); see Orange County Appraisal Dist. v. Agape
Neighborhood Improvement, Inc., 57 S.W.3d 597, 602 (Tex. App.—Beaumont 2001,
pet. denied) (holding that subordinate unit of qualified CHDO may be considered
CHDO for tax purposes when subordinate unit owns and operates property for
reasons and purposes that are consistent with the applicable eligibility requirements
established for CHDOs). 
          An entity holds equitable title when it possesses “the present right to [compel]
legal title.” Harris County Appraisal Dist. v. Southeast Texas Hous. Fin. Corp., 991
S.W.2d 18, 23 (Tex. App.—Amarillo 1998, no pet.); see also Comerica Acceptance
Corp. v. Dallas Cent. Appraisal Dist., 52 S.W.3d 495, 497–98 (Tex. App.—Dallas
2001, pet. denied). The right to compel legal title arises, for instance, under the
following circumstances: (1) parent company A holds a full ownership interest in its
subsidiary B; (2) B holds legal title to certain real property; (3) upon dissolution of
B, legal title to its real property will revert to A; and (4) A has the power to dissolve
B at anytime. Southeast Tex. Hous. Fin., 991 S.W.2d at 21–23. Significantly, “where
a tax exempt entity holds equitable title to property, the property is tax exempt.” Id.
at 23. 
          Here, summary judgment evidence shows that AHF holds equitable title to the
apartments. According to CD’s articles of organization: (1) AHF is CD’s sole
member; (2) the members of CD can vote to dissolve CD at anytime; and (3) upon
dissolution, CD’s assets shall revert to its members, namely, to AHF. Moreover, the
boards of AHF and CD are comprised of the same directors. According to TRQ’s
partnership agreement, its partners comprise CD, which holds a 99% limited
partnership interest in TRQ, and TRQ Galveston, which holds a 1% general
partnership interest in TRQ. TRQ Galveston’s partnership agreement lists CD as its
sole partner. In the case of dissolution, TRQ and TRQ Galveston’s assets revert to
their respective members, namely to CD, which in turn can be dissolved at any time
by AHF, with the result that CD’s assets revert to AHF. Thus, reversion of legal title
for the apartments can be effectively compelled from TRQ to AHF at AHF’s behest. 
As a result, we conclude that AHF has the present right to compel legal title to the
apartments and thus holds equitable title to them. 
          We next consider whether section 11.182(b) allows equitable title holders to
claim the exemption from ad valorem taxes it provides. 
          A plain reading of section 11.182 indicates that its purpose is to encourage the
availability of affordable housing for low-income and moderate-income Texans by
exempting qualified CHDOs from ad valorem taxes on certain properties they own. 
See Tex. Tax Code Ann. § 11.182. To ensure that the granting of such exemptions
does not exert a deleterious effect on the tax revenue available to communities for
social programs, the statute provides that an organization may not receive an
exemption on a given property in the subsequent tax year unless it spent at “at least
40 percent of the total amount of taxes that would have been imposed on the property
. . . on social, educational, economic development services, capital improvement
projects, or rent reduction.” Tex. Tax Code Ann. § 11.182(d). Thus, the statute uses
ad valorem tax exemptions as an incentive to encourage qualified organizations to
invest in housing development for low-income persons while requiring those
organizations to reinvest a portion of their tax savings in social welfare programs. 
          The record before us indicates that AHF is a CHDO whose sole business
purpose is the provision of affordable housing to low-income and moderate-income
persons and that it spends at least 40% of the total amount of taxes that would have
been imposed on the apartments on social, educational, and economic development
services, capital improvements, or rent reduction. Thus, AHF is a tax exempt entity
for the purposes of section 11.182(b). As it effectively owns and controls TRQ
through the partnership arrangements discussed above, AHF bears ultimate
responsibility for any tax burden placed upon TRQ, i.e., any tax placed on TRQ will
flow back through the partnership chain to AHF. See 126 U.S.C. § 701, et seq. 
          As we read the statute, it would be inconsistent with the intent of the
Legislature to interpret section 11.182(b) in such a way that AHF, which holds
equitable title to the apartments, is ultimately responsible for paying any taxes
associated with them, and spends at least 40% of the amount that would be paid in
taxes on social services and improvements to the apartments, is ineligible to receive
a tax exemption that it would otherwise qualify for if it held legal title to the
apartments. The Legislature enacted section 11.182(b) in 1997 to promote the
availability of low-income housing through the provision of tax exemptions for
certain charitable organizations. See House Comm. on Finance, Bill Analysis,
Tex. H.B. 137, 75th Leg., R.S. (1997). To tax TRQ separately, even though it is
wholly owned and controlled by an exempt entity (AHF), would defeat the
Legislature’s purpose in enacting section 11.182. See Southeast Tex. Hous. Fin., 991
S.W.2d at 22–23. 
          Our conclusion is supported by Southeast Texas Housing Finance in which the
Amarillo Court of Appeals reached a similar conclusion in a case involving section
394.905 of the Texas Local Government Code, a statutory provision that provides tax
exemptions to publicly owned property used for public purposes. See id. at 22 (“[T]o
hold that the [appellant’s] wholly owned subsidiaries are separately taxable while the
[appellant] is exempt would defeat that [L]egislature’s purpose . . .” in enacting the
tax exemption provided for by section 394.905 of the Local Government Code). Our
conclusion is further supported by the fact that Texas courts have found that CHDO
status, a necessary condition to receiving an exemption under section 11.182(b), can
be imputed to non-CHDO subsidiaries that are wholly owned and controlled by an
organization qualifying as a CHDO. See Agape Neighborhood Improvement, Inc., 57
S.W.3d at 602. Thus, for the purposes of section 11.182(b), AHF’s CHDO status may
be imputed to TRQ. 
          The Appraisal District cites American Housing Foundation v. Brazos County
Appraisal District in support of its position that only legal title holders can claim
section 11.182(b) ad valorem exemptions. 166 S.W.3d 885 (Tex. App.—Waco 2005,
pet. denied). Although the Appraisal District reads Brazos County as holding that an
equitable owner cannot qualify for an exemption under section 11.182(b), the Waco
court did not specifically address that question. Rather, it assumed that the term
“owner” in subsection 11.182(b) referred only to a legal owner, not to an equitable
owner. It then reasoned that (1) AHF was not the legal owner as required by
subsection 11.182(b); (2) the legal owner, as here a partnership, was not a CHDO;
and, therefore, (3) the exemption was not available. 
          The court then went on to construe subsection 11.182(e),


 which was added to
section 11.182 in 2001. Subsection 11.182(e) requires that “[i]n addition to meeting
the applicable requirements of subsections (b) and (c),” an organization seeking an
exemption under subsection (b) for property constructed after December 31, 2001,
must “control 100% of the interest in the general partner if the project is owned by
a limited partnership.” Tex. Tax. Code Ann. § 11.182(e) (emphasis added). The
court held that the addition of subsection 11.182(e) expanded the tax exemption
available to CHDOs in section 11.182 to include organizations with equitable
ownership, like AHF, that were previously barred from ownership for exemption
purposes. Brazos County, 166 S.W.3d at 889. We disagree with this construction of
the statute for two reasons.
          First, Brazos County’s construction of section 11.182 is internally inconsistent. 
New subsection 11.182(e) requires that an organization seeking an exemption under
section 11.182 meet the requirements in subsection 11.182(b), which Brazos County
construes as requiring legal ownership of the property for which an exemption is
sought. But subsection 11.182(e) provides that “if the project is owned by a limited
partnership,” the organization seeking the exemption must “control 100 percent of the
interest in the general partner.” Tex. Tax. Code Ann. § 11.182(e). Subsection
11.182(e) clearly provides for an exemption for a CHDO that is only the equitable
owner of property whose legal owner is a partnership, as here. But if the owner must
be the legal owner in order to satisfy subsection 11.182(b), then no CHDO which
owns property indirectly can ever qualify for the exemption under subsection
11.182(e) because, by definition, it is not the legal owner. But if that is so, subsection
11.182(e) is meaningless because it assumes that a CHDO which controls a limited
partnership that owns taxable property can be the owner of the property for purposes
of obtaining the exemption, so long as it controls 100% of the general partner of the
partnership. 
          The only way that subsection 11.182(e) makes sense is if it is understood not
as expanding the tax exemption available under section 11.182 to CHDOs that control
limited partnerships which own taxable property, but as limiting an exemption already
available to equitable owners under section 11.182 to only those CHDOs which
control 100% of the general partner of a limited partnership that owns taxable
property committed to non-profit housing. This natural reading of the statute is
supported by the legislative history of the amendment. 
          As stated above, the Legislature enacted section 11.182(b) in 1997 to promote
the availability of low-income housing through the provision of tax exemptions for
certain charitable organizations. See House Comm. on Finance, Bill Analysis,
Tex. H.B. 137, 75th Leg., R.S. (1997). Subsection 11.182(b) did not define “owner”
or “owns,” but existing Texas common law had long recognized that an equitable title
holder may be considered an owner for taxation purposes. See Texas Turnpike Co.
v. Dallas County, 271 S.W.2d 400, 401–02 (Tex. 1954). In 2001, the Legislature
became concerned that organizations were too easily qualifying for tax exemptions
under subsection 11.182(b), thereby depleting community tax revenues without an
equivalent return to the low-income housing market. To counteract this, the
Legislature enacted subsection 11.182(d), which required organizations receiving
exemptions to reinvest a portion of the exemption into social welfare programs, and
subsection 11.182(e), which added requirements that an organization must satisfy to
qualify for an exemption on any property constructed after December 31, 2001. See
House Comm. on Finance, Bill Analysis, Tex. H.B. 3383, 77th Leg., R.S. (2001). 
One of the additional requirements is that an organization can receive a tax exemption
for a project owned by a limited partnership only if it controls a 100% interest in the
general partner of that partnership. Tex. Tax Code Ann. § 11.182(e). But this
requirement specifically applies only to properties built after December 31, 2001. See
id. Recognizing the former abuse and the purpose of the reform, Senator Eddie
Lucio, Jr., a sponsor of the 2001 amendments to subsection 11.182, stated, “I am
pleased that the accountability provisions of this bill will result in lower rents, cleaner
properties, and a stronger accountability standard for community housing projects. 
It is not uncommon for abuses to occur when tax exemptions are not backed by
rigorous measures, so this bill tightens regulations and enhances the reinvestment
program.”


 
          This review of the statute’s language, origins and amendments yields only one
conclusion, namely, that by enacting subsection 11.182(e) the Legislature sought to
restrict exemptions available to property owners under section 11.182, not to expand
them. Thus, a natural reading of the statute, taking account of its plain language and
legislative history, demonstrates that: (1) subsection 11.182(b) enabled qualifying
organizations to obtain ad valorem tax exemptions on properties of which they were
either the legal owner or the equitable “owner”; (2) a determination was made that
exemptions were being granted too liberally; (3) the Legislature enacted subsection
11.182(e) to require that an organization seeking an exemption for a property owned
by a limited partnership must control a 100% interest in the limited partnership’s
general partner; and (4) the requirements of subsection 11.182(e) were applied only
prospectively, i.e., to properties built after December 31, 2001. Therefore, we
interpret subsection 11.182(b) to mean that an organization seeking an exemption on
a property owned by a limited partner and built before December 31, 2001 need not
show that it controls a 100% interest in the limited partnership’s general partner. 
Rather, it need only show that it “owns” the property, be it equitably or legally. 
Consequently, we reject the Appraisal District’s contention that an equitable owner
of a property built before December 31, 2001 cannot qualify for an exemption under
subsection 11.182(b). 
          Because we conclude that an otherwise qualified equitable property owner may
obtain an exemption from ad valorem taxes pursuant to subsection 11.182(b) of the
Texas Tax Code, we sustain appellant’s first issue on appeal. 
 
Does section 11.436 of the Texas Tax Code provide an exception extending
the filing deadline for 11.182 exemptions? 

          Appellant’s second issue on appeal requires us to consider whether section
11.436 of the Texas Tax Code extends the deadline for filing applications for tax
exemptions pursuant to section 11.182. 
          Generally, eligibility for a tax exemption is determined on January 1 of the year
in which the exemption is sought. See Tex. Tax. Code Ann. § 11.42(a). Moreover,
“To receive an exemption the eligibility for which is determined by the claimant’s
qualifications on January 1 of the tax year, a person required to claim an exemption
must file a completed application before May 1.” See id. § 11.43(d). Thus, to claim
an exemption for the apartments in 2003 under section 11.43(d), appellants would
have had to file their application prior to May 1, 2003. Section 11.436(a), however,
provides an exception to the general filing deadline. According to the version of
section 11.436(a) in effect in 2003:
(a) An organization that acquires property that qualifies for an
exemption under Section 11.181(a) or 11.182(a) may apply for
the exemption for the year of acquisition not later than the 30th
day after the date the organization acquires the property, and the
deadline provided by Section 11.43(d) does not apply to the
application for that year.

Act of June 17, 1997, 75th Leg., R.S., ch. 715, 1997 Tex. Gen. Laws 2358, 2361.
          Here, appellants filed their application on December 30, 2003, and thus would
be disqualified from obtaining a 2003 exemption if the filing deadlines stated in
section 11.43 applied. Appellants contend, however that they are entitled to the 30-day exception provided by section 11.436 because (1) they acquired the apartments
on December 30, 2003 and (2) the apartments did not qualify for an exemption under
section 11.182 until they were acquired by appellants. Conversely, the Appraisal
District argues that section 11.436 does not apply in appellant’s case because the
apartments have not been acquired by anyone since TRQ purchased them from
WHUD in 1998. In effect, the Appraisal District reasserts the argument it used in
claiming that AHF could not receive an exemption under section 11.182(b)—legal
title was never transferred to AHF, and hence AHF never acquired the apartments, as
required by section 11.436. 
          We agree with appellants. Having held that AHF equitably owns the
apartments, we similarly hold that AHF acquired the apartments for the purposes of
section 11.436 when AHF obtained an effective controlling interest in TRQ. It was
not until the apartments were acquired by AHF that AHF qualified for an exemption
under section 11.182. Therefore, we conclude that, pursuant to section 11.436, AHF
had 30 days from December 30, 2003, in which to file its application for an
exemption.
          As its application was filed on December 30, 2003, we sustain appellant’s
second issue on appeal. 
RESPONSE TO THE DISSENT
          We respectfully disagree with the dissent’s reasoning and conclusions. 
          The dissent asserts that “[a]n equitable title holder is not an owner for taxation
purposes unless the legal title holder is legally encumbered, or a dispute as to the
legal title holder’s identity exists.” It cites Texas Turnpike Co., 271 S.W.2d at
401–02, as authority for this proposition, and then states: “‘Equitable title’ for
property tax purposes thus does not exist absent uncertainty as to actual, legal title,
or legal encumbrance (as, for example, between trustees and beneficiaries or estate
administrators and heirs).” With all due respect to the dissent, this is not the
proposition for which Texas Turnpike and its progeny stand. Texas Turnpike states:
Undoubtedly the equitable title is the taxable title in those situations in which
the grantee takes possession under a deed in which a vendor’s lien is reserved
or under a contract of sale by which the vendee is obligated to pay the purchase
price. . . . Undoubtedly, also, this court has said that the grantee in a
conveyance held in escrow is the owner of the equitable title to the property
conveyed. . . . But in the latter cases taxable ownership was not the issue. 
Moreover, in such cases delivery of the conveyance by the escrow agent was
dependent upon performance of certain conditions by the grantee; the grantee
had it in his power to perform the conditions to compel the delivery of the
conveyance transferring legal title.

Id. at 402 (citations omitted) (emphasis added). The court then went on to distinguish
the facts in the case at bar, holding that the state, under the circumstances of that case,
was not the equitable owner of land for tax purposes because “the right of the state,
as grantee, to acquire the deeds and the legal title they convey is entirely dependent
upon performance of conditions by the grantors.” Id. Thus, the state’s interest in the
property was not a vested interest, but purely contingent. Id. 
          Here, by contrast, the dissent admits that AHF owns 100% of CD Captain’s
Landing, which in turn owns 100% of TRQ Galveston, the taxpayer and legal title
holder of TRQ Captain’s Landing. As the 100% owner of both intervening entities,
AHF does have ‘the present right to compel legal title’ to TRQ Captain’s
Landing—there being no one there to stop the exercise of that power. Thus, AHF
satisfies Texas Turnpike Co.’s definition of an equitable owner of property for tax
purposes and that of its progeny. See Texas Turnpike Co., 271 S.W.2d at 402
(defining equitable owner as one who has it “within his power to perform the
conditions and compel the delivery of the conveyance transferring legal title”);
Signature Flight Support Corp., 140 S.W.3d at 840 (observing that “a person holding
‘equitable title’ to property may be owner for taxation purposes; equitable title is
defined as the present right to compel legal title”); Comerica Acceptance Corp., 52
S.W.3d at 497 (construing “owner” as used in section 32.07 of Texas Tax Code,
imposing property taxes on owner of property, as “a person or entity holding legal
title to the property, or holding an equitable right to obtain legal title to the
property”); Southeast Tex. Hous. Fin., 991 S.W.2d at 23 (defining “equitable title”
as “the present right to legal title” and holding that subsidiary corporations created
by housing finance corporation to hold and operate low income housing were entitled
to tax exemption for that property because owner of subsidiary corporations had
present right to legal title and stating, “Where a tax exempt entity holds equitable title
to property, the property is tax exempt”); Tex. Dept. of Corrections v. Anderson
County Appraisal Dist., 834 S.W.2d 130, 131 (Tex. App.—Tyler 1992, writ denied)
(holding that state had taxable title to improvements to prison unit based on equitable
title held by state); Carmichael v. Delta Drilling Co., 243 S.W.2d 458, 460 (Tex. Civ.
App.—Texarkana 1951, writ ref’d) (stating, “An equitable title is the present right to
the legal title”). This Court’s adoption of the dissent’s refusal to recognize the
concept of equitable title as distinct from legal title for taxation purposes when the
person claiming equitable title has the present right to compel the transfer of legal
title to itself would set up a conflict between this Court and each of the foregoing
courts.
          In addition, the dissent’s reading of the scope of our opinion is far too broad.
It is simply incorrect to claim, as the dissent does, that “TRQ and AHF seek to expand
the principle of equitable title ‘owners’ to included classes of investors: i.e., partners,
limited partners, and limited liability company members (and, by implication,
corporate shareholders).” Rather, TRQ and AHF seek to avail themselves of a tax
benefit clearly contemplated by the plain language of section 11.182—which
expressly provides that “[i]n addition to meeting the requirements of Subsection [] (b)
. . . to receive an exemption under Subsection (b) for improved real property that
includes a housing project constructed after December 31, 2001, and financed with
qualified 501(c)(3) bonds issued under Section 145 of the Internal Revenue Code of
1986, tax-exempt private activity bonds subject to volume cap, or low-income
housing tax credits, [a CHDO] must: (1) control 100 percent of the interest in the
general partner if the project is owned by a limited partnership. . . .” Tex. Tax Code
Ann. § 11.182(e). And they seek this tax benefit under established principles of state
law that recognize the Legislature’s right to confer property tax benefits on an
indirect owner of property used for statutorily prescribed public purposes as an
“equitable owner” of the property when the indirect owner has a present right to
compel legal title to the property. 
          Interpreting section 11.182 as the dissent urges us to do—to exclude a CHDO
which controls 100% of the general partner of a limited partnership that holds legal
title to non-profit low and moderate income housing from the tax exemption available
to the owner of such property under section 11.182—not only would generate a
conflict with the plain language of section 11.182, with established law construing
the concept of equitable title for tax purposes, and with federal law governing similar
arrangements, it would also undermine the express legislative purpose of section
11.182, which is to promote the availability of low-income housing through the
provision of tax exemptions for certain charitable organizations, namely CHDO’s, in
return for the investment of at least 40% of that lost tax revenue in legislatively
approved public purposes. Therefore, we cannot agree that this Court should adopt
the dissent’s construction of section 11.182.
CONCLUSION 
          We reverse the summary judgment granted in favor of the Appraisal District,
grant appellant’s cross-motion for partial summary judgment, and render judgment
that, as the equitable owner of TRQ, AHF qualifies for the exemption in section
11.182(b) of the Texas Tax Code and that its application for the exemption was
timely filed pursuant to section 11.436 of the Code.
 



                                                             Evelyn V. Keyes
                                                             Justice

Panel consists of Justices Keyes, Alcala, and Bland.

Justice Bland, dissenting.